[No. B073218. Second Dist., Div. Seven. Dec. 13, 1993.]

CHRISTOPHER BONZER, Plaintiff and Respondent, v.
CITY OF HUNTINGTON PARK et al., Defendants and Appellants.

**COUNSEL**

Samuel J. Wells for Defendants and Appellants.

Silver, Shaeffer & Hadden and Stuart D. Adams for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—We find the trial court abused its discretion in denying appellants' motion under Code of Civil Procedure[1] section 473 ("The court may . . . relieve a party . . . from a[n] . . . order . . . taken against him . . . through his . . . mistake, inadvertence, surprise or excusable neglect.").

### FACTUAL AND PROCEDURAL BACKGROUND

Christopher Bonzer (respondent) was promoted from police officer to senior officer in the City of Huntington Park Police Department. The promotion was subject to completion of a six-month probation period. During that probation his performance was rated "needs improvement" and he was returned to his former position of police officer.

Officer Bonzer retained counsel who, on June 19, 1991, sent letters[2] to the civil service commission and chief administrative officer (CAO) demanding an administrative appeal from the "demotion." The CAO forwarded this letter to Samuel J. Wells, the attorney who represented the City of Huntington Park in personnel matters. Mr. Wells promptly replied,[3] informing counsel for Officer Bonzer (Mr. Stuart D. Adams) that he was responding on behalf of the City of Huntington Park Police Department and its CAO and that their position was "Officer Bonzer is not entitled to any administrative appeal. . . ."

In July and August 1991 counsel for Officer Bonzer sent two more letters to Mr. Wells, reiterating his position. On August 30, 1991, Mr. Wells replied, again denying the requested appeal.

Seven months later, on March 31, 1992, counsel for Officer Bonzer filed a petition for a writ of mandate seeking an order requiring the City of Huntington Park to set a hearing on Officer Bonzer's appeal. Named as respondents were the City of Huntington Park (appellant), the City of Huntington Park Civil Service Commission (appellant), and Patrick Connolly, chief of police (appellant). Service of the petition on the city and the

---

[1]Statutory references, unless otherwise noted, are to the Code of Civil Procedure.

[2]These letters were sent by both fax and Federal Express.

[3]The record contains two letters, identical except for their date, one dated June 27, 1991, the other, July 5, 1991.

civil service commission was effected by personally serving the city clerk, Marilyn Boyette, on April 20, 1992.

Service on Chief of Police Connolly was effected May 4, 1992, also by personal service. The service copies of the petition indicated that the hearing date, time, and department were all "not assigned."

On May 28, 1992, counsel for Officer Bonzer filed a "Notice of Motion And Motion To Apply For Peremptory Writ of Mandate." The notice specified the hearing date, time, and department as June 22, 1992, 8:30 a.m., department 85. Proof of service accompanied the notice. It indicated that copies of the notice had been separately mailed to the civil service commission, the City of Huntington Park, and Chief of Police Patrick Connolly. No copy was mailed to Mr. Samuel, J. Wells, the City of Huntington Park's attorney with whom counsel for Officer Bonzer had been corresponding.

On June 22, 1992, at 8:30 a.m., in department 85, when no appearance was made on behalf of the City of Huntington Park, the trial court granted Officer Bonzer's petition. Counsel for Officer Bonzer, as directed by the trial court, notified the City of Huntington Park the writ had been granted. The city promptly informed counsel, Mr. Samuel J. Wells. On June 30, 1992, Mr. Wells telephoned counsel for Officer Bonzer and told him that neither he nor the city had been aware of the June 22 hearing and requested a stipulation to "reopen" the matter for a hearing on its merits. When counsel for Officer Bonzer refused the stipulation, appellants moved under section 473 to set aside the judgment and recall the writ of mandate. Six declarations accompanied the motion. Thereafter appellants filed an answer to the petition for a writ of mandate.

On November 12, 1992, the trial court denied the section 473 motion and this appeal followed.

## DISCUSSION

In moving for section 473 relief appellants presented evidence they had not received actual notice of the June 22, 1992, hearing. The trial court apparently concluded this evidence was inadequate and denied their motion. We review the trial court's ruling.

1. *Standard of review*

■ "It is settled that the law favors a trial on the merits . . . and therefore liberally construes section 473. . . . Doubts in applying section

473 are resolved in favor of the party seeking relief from default . . . and if that party has moved promptly for default relief only slight evidence will justify an order granting such relief.

"As recently expressed, 'It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citations.] Therefore, when a party in default moves promptly to seek relief, very slight evidence is required to justify a trial court's order setting aside a default.' " (*Iott* v. *Franklin* (1988) 206 Cal.App.3d 521, 526-527 [253 Cal.Rptr. 635].)

■ "The burden of establishing excusable neglect is upon the party seeking relief who must prove it by a preponderance of the evidence." (206 Cal.App.3d at p. 528.) But ". . . a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713].)

## 2. *Evidence of actual notice*

■ The only evidence that any appellant had actually received notice of the June 22, 1992, hearing was a "proof of service" declaration executed by an employee of counsel for Officer Bonzer. The declarant, pursuant to section 1013a, subdivision (3),[4] did *not* attest to actually mailing the notices or to having personal knowledge they were mailed. (See *Tobin* v. *Oris* (1992) 3 Cal.App.4th 814, 825-826 [4 Cal.Rptr.2d 736].) Rather, the declarant stated she was familiar "with the firm's practice of collection and processing correspondence for mailing" and "[u]nder that practice it *would be* deposited with U.S. Postal service . . . in the ordinary course of business." (Italics added.)

---

[4]The statute provides: "Proof of service by mail may be made by one of the following methods:

" . . . . . . . . . . . . . . . . . . . . . . .

"(3) An affidavit setting forth the exact title of the document served and filed in the cause, showing (A) the name and residence or business address of the person making the service, (B) that he or she is a resident of, or employed in, the county where the mailing occurs, (C) that he or she is over the age of 18 years and not a party to the cause, (D) that he or she is readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service, (E) that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business, (F) the name and address of the person served as shown on the envelope, and the date and place of business where the correspondence was placed for deposit in the United States Postal Service, and (G) that the envelope was sealed and placed for collection and mailing on that date following ordinary business practices. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit."

Pursuant to Evidence Code section 641 ("A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail.") this declaration created a rebuttable presumption the notice had been received in the ordinary course of mail.

Evidence Code section 604 prescribes the effect of such a rebuttable presumption: "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and *until evidence is introduced which would support a finding of its non-existence*, in which case the trier of fact shall determine the existence or non-existence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate." (Italics added.)

3. *Evidence of no actual notice*

Appellants' evidence of no actual notice consisted of six declarations.

Chief of Police Patrick M. Connolly declared that his mail was received by his secretary Barbara Peckler who then promptly gave it to him. He had no recollection of receiving a notice of the June 22 hearing and "had no knowledge that a hearing had been set for, let alone conducted on, June 22, 1992, in this matter, until well after that date."

Barbara Peckler, under penalty of perjury, described how she was the only person who received the chief's mail. She opened it, date stamped it, and personally gave it to the chief. She did not receive a notice of the June 22 hearing. After June 30, at the chief's direction, she conducted a search for the June 22 notice and did not find such a document.

The city clerk, Marilyn Boyette, declared that "[p]rior to June, 1992, my Deputy Clerk and I were each aware that Mr. Bonzer had pending a lawsuit against the City of Huntington Park concerning personnel issues. Had we received any Notice of Motion or other document containing or setting a hearing date in this action, we would have . . . immediately routed the document to Mr. Jeffers' [the CAO] office." She had no recollection of receiving the subject notice. She conducted a search for the document and found nothing.

Donald L. Jeffers, the chief administrative officer for the City of Huntington Park, declared he had received in May 1992 Officer Bonzer's initial dateless petition for a writ of mandate. He sent it to Mr. Wells, the city's

attorney for personnel matters. He received no other Officer Bonzer-related document in May or June 1992. He had no notice of a June 22 hearing. In July 1992 he asked every member of his staff if they had seen such a notice. None had. Mr. Jeffers attested that "to my knowledge and according to our files, neither I nor the City of Huntington Park received any notice of the hearing date on Mr. Bonzer's Petition for Writ of Mandate until . . . July, *after* the hearing apparently already had been conducted and a decision rendered."

Martha Castillo, a personnel assistant to Mr. Jeffers, declared "Mr. Jeffers asked me to conduct a search to determine whether, in fact, our joint Administration/Personnel Office had received any Notice of Motion or any other document containing a hearing date in this matter before we received the Statement of Decision in early July." She conducted the search and did not find a notice of the June 22 hearing.

Samuel J. Wells, attorney for appellants, declared that the law firm representing Officer Bonzer "have been aware of my representation of the Huntington Park Police Department throughout the last five (5) years." Further, that "I have made clear to [Officer Bonzer] and his attorney that my firm represented the City of Huntington Park and the Police Department with respect to [Officer Bonzer's] request for an administrative appeal." He did not receive a notice of the June 22 hearing. On June 30, 1992, he was told the chief of police had just received mailed documents relating to the June 22 hearing.

This evidence of no actual notice was neither impeached nor contradicted. Counsel for Officer Bonzer filed his own declaration but it did not pertain to the issue of actual notice. It was, moreover, self-contradictory (compare: ". . . I was not informed that Mr. Wells would be representing the City with respect to contesting the Writ of Mandate" with ". . . I proceeded to the court and anticipated seeing Mr. Wells at the proceeding . . . .") and inconsistent with his June 22 representations to the trial court.[5]

## 4. *Analysis and conclusion*

Upon occasion, this court has candidly noted when a case was close, when an issue was in doubt. This is *not* such a case.

---

[5]His declaration stated: "I did not have an opportunity to review the file in preparation for the hearing until the morning of June 22, 1992 . . . . It was not until this time that I realized that there was no response to the Petition or Notice of Motion." But on Monday, June 22, when asked by the trial court if he had received any response from the city he stated he had not and "I expected something in the mail at least by Friday and I *even went over this weekend to see if anything came in* and there was nothing."

Upon presentation of appellant's detailed, credible, and unimpeached evidence of no actual notice—the *presumption* of such notice (Evid. Code, § 641) ceased to exist. (Evid. Code, § 604.) The only remaining effect of the "Proof of Service" declaration was to enable the trial court to draw "any inference that may be *appropriate*." (*Ibid.*)

Any inference, in the face of appellants' declarations, that the subject notices were actually received is, as a matter of law, *inappropriate*. (*Carl* v. *Thomas* (1931) 116 Cal.App. 294, 300 [2 P.2d 872]; *Tremayne* v. *American SMW Corp.* (1954) 125 Cal.App.2d 852, 854 [271 P.2d 229]; see also *Bunner* v. *Imperial Ins. Co.* (1986) 181 Cal.App.3d 14, 23 [225 Cal.Rptr. 912].) It was a clear abuse of discretion for the trial court to deny appellants' section 473 motion.

## DISPOSITION

The trial court order denying section 473 relief is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Costs on appeal are awarded to appellants.

Lillie, P. J., and Johnson, J., concurred.