[No. B136651. Second Dist., Div. One. Oct. 26, 2000.]

CHRISTINE CRAIG, Plaintiff and Appellant, v.
BROWN & ROOT, INC., et al., Defendants and Respondents.

COUNSEL

Law Offices of Richard J. Wynne and Richard J. Wynne for Plaintiff and Appellant.

O'Melveny & Myers, Scott H. Dunham and Jeffrey A. Wortman for Defendants and Respondents.

OPINION

**VOGEL (MIRIAM A.), J.**—The trial court compelled arbitration of this wrongful termination action, which was then arbitrated and decided in favor of the employer. The employer's petition to confirm the arbitrator's award was granted. The employee appeals, claiming she never agreed to arbitrate and, in the alternative, that the arbitration agreement is unfair, unconscionable and unenforceable. We affirm.

FACTS

A.

In 1981, Christine Craig went to work for a company that was later acquired by Brown & Root, Inc., a construction firm. In 1993, Brown &

Root established a four-step Dispute Resolution Program to resolve "all employee disputes." In a memorandum sent to all employees, Brown & Root explained the purpose of the Dispute Resolution Program and emphasized (in the following form) that everyone would be bound by it:

> The enclosed brochure explains the procedures as well as how the Dispute Resolution Program works as a whole. Please take the time to read the material. IT APPLIES TO YOU. It will govern all future legal disputes between you and the Company that are related in any way to your employment.

The "enclosed brochure" explained the Program's four-step progression— from open access to management, to an informal conference, to mediation, to arbitration. "Arbitration" is explained this way: "Arbitration is a process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator makes this decision after both sides present their arguments at the arbitration hearing. There is no jury. If you win, you can be awarded anything you might seek through a court of law. [¶] The neutral party, AAA, runs the proceedings which are held privately. Since 1926, AAA has handled hundreds of thousands of cases. Though arbitration is much less formal than a court trial, it is an orderly proceeding, governed by rules of procedure and legal standards of conduct."

The brochure explains the procedure for requesting arbitration, and makes it clear that the maximum cost to the employee is $50. The "role of lawyers" in the arbitration process is described in refreshingly candid language: "The Company has access to legal advice through its law department and outside lawyers. You may consult with a lawyer or any other adviser of your choice. Upon approval of the Program Administrator, Brown & Root will pay the major part of your legal fees through the Legal Consultation Plan, up to a maximum of $2,500. . . . [¶] You are not required, however, to hire a lawyer to participate in arbitration. If you choose not to bring a lawyer to arbitration, the Company will also participate without a lawyer."

B.

In April 1997, Brown & Root terminated Craig's employment. In October, Craig sued Brown & Root and Daniel Banks (Craig's immediate supervisor), alleging a variety of tort and contract theories (wrongful termination, sexual harassment, gender discrimination, and so on). Banks answered, alleging an agreement to arbitrate as an affirmative defense; Brown & Root filed a petition to compel arbitration supported by declarations and other evidence

establishing the facts summarized above. In addition, Brown & Root's evidence showed that, in May 1993 and again in the fall of 1994, copies of the memorandum and the Dispute Resolution Program brochure had been sent to Craig's home address (and that this mail had not been returned to Brown & Root).

Craig (who was and is represented by counsel) opposed the petition, claiming "[t]here exists no evidence that [she] expressly agreed to arbitrate her claims, signed an acknowledgment of receipt of any the [*sic*] materials constitution [*sic*] the Program prior to the time her claims arose, or had actual knowledge of the Program . . . ." Her declaration says this about the items mailed to her: "I have carefully read [the memorandum and brochure] and can affirmatively state that I did not receive any of these documents at my residence in Baldwin Park during the years 1993 or 1994."

The trial court granted Brown & Root's petition and dismissed Craig's action with prejudice. Craig appealed, contending the action should have been stayed pending conclusion of the arbitration. Brown & Root conceded the point and we reversed the order of dismissal. (*Craig v. Brown & Root, Inc.* (June 22, 1999, B124425) [nonpub. opn.].) The dispute was thereafter arbitrated and decided in favor of Brown & Root, after which the trial court confirmed the arbitration award. Craig appeals.

## DISCUSSION

### I.

Craig contends the evidence is insufficient to prove the existence of an agreement to arbitrate. She is wrong.

■ General principles of contract law determine whether the parties have entered a binding agreement to arbitrate. (*Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 640-641 [223 Cal.Rptr. 838].) This means that a party's acceptance of an agreement to arbitrate may be express (e.g., *Mago v. Shearson Lehman Hutton Inc.* (9th Cir. 1992) 956 F.2d 932 [agreement to arbitrate included in job application]; *Nghiem v. NEC Electronic, Inc.* (9th Cir. 1994) 25 F.3d 1437 [agreement to arbitrate included in handbook executed by employee]; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105 [88 Cal.Rptr.2d 664] [employer may terminate employee who refuses to sign agreement to arbitrate]) or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11 [96 Cal.Rptr.2d 179, 999 P.2d 71] [implied acceptance of changed rules regarding job security]; *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 635 [69 Cal.Rptr.2d 300] [implied acceptance of changed compensation rules]).

Brown & Root's evidence shows that copies of its memorandum and brochure were twice sent to Craig, once in 1993, then again in 1994. This evidence created a presumption that Craig received the items that were sent, and shifted the burden of producing evidence to her. (Evid. Code, § 641 [a letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail]; 1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, §§ 67, 78, pp. 216, 219.)[1] As is true of most presumptions affecting the burden of producing evidence, this one is an expression of common experience, one in which the presumed fact (receipt of that which was mailed) is so likely to be true that the law requires it to be assumed in the absence of contrary evidence. (Witkin, Cal. Evidence, *supra*, § 54, p. 203.)

When the foundational facts are established, a presumption affecting the burden of producing evidence obligates the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced to support a finding of its nonexistence—in which event the trier of fact determines the existence or nonexistence of the fact from the evidence and without regard to the presumption. (§ 604.) Although the presumption disappears where, as here, it is met with contradictory evidence, inferences may nevertheless be drawn from the same circumstances that gave rise to the presumption in the first place. (*Ibid.* ["Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate"]; but see *Bonzer v. City of Huntington Park* (1993) 20 Cal.App.4th 1474, 1481 [25 Cal.Rptr.2d 278].)

On this appeal, the disappearance of the presumption is moot. Its only relevance was in the trial court, where the trier of fact (in this context, the court) was required to determine the contested fact (whether the memorandum and brochure were received by Craig) without regard to the presumption and solely on the basis of the conflicting evidence—Brown & Root's declarations and documents showing that the items were mailed to Craig at her home address and not returned, and Craig's equivocal denial of receipt. The trial court decided that issue in favor of Brown & Root, and its credibility call is binding on this appeal. (*Estate of Joslyn* (1995) 38 Cal.App.4th 1428, 1434 [45 Cal.Rptr.2d 616].)

The disappearance of the presumption does *not* mean there is insufficient evidence to support the trial court's finding. Brown & Root's declarations and documents (mailing lists) are circumstantial evidence from which the court was entitled to infer that Craig had received the memorandum and brochure. " '[I]f a party proves that a letter was mailed, the trier of fact is required to find that the letter was received in the absence of any

---

[1] All section references are to the Evidence Code.

believable contrary evidence. However, if the adverse party denies receipt, the presumption is gone from the case. *The trier of fact must then weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the letter was received.'* " (*Slater v. Kehoe* (1974) 38 Cal.App.3d 819, 832, fn. 12 [113 Cal.Rptr. 790], italics added.)

Accordingly, there is substantial evidence (1) that the memorandum and brochure were received by Craig in 1993 and again in 1994; (2) that she continued to work for Brown & Root until 1997; and (3) that she thereby agreed to be bound by the terms of the Dispute Resolution Program, including its provision for binding arbitration.

## II.

Craig contends the arbitration agreement is in any event an unenforceable adhesion contract. We disagree.

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669], our Supreme Court held that mandatory employment arbitration agreements are enforceable if the arbitration permits the employees to vindicate their statutory rights; that is, "the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Id.* at p. 91.) Craig does not contend that Brown & Root's arbitration procedure fails to meet these requirements.[2] We don't see how she could.

Brown & Root's arbitration program provides for a neutral arbitrator. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 103 [the neutral arbitrator requirement is essential to ensuring the integrity of the arbitration process].) The cost to the employee is a mere $50, substantially less than the filing fee for a superior court action. The balance is paid by Brown & Root. (*Id.* at pp. 107-113.) Those employees who choose to have a lawyer involved in the process can receive up to $2,500 from Brown & Root for that purpose. Adequate discovery is available. (*Id.* at pp. 104-106 [the employer, by agreeing to arbitrate, has by implication consented to permit adequate discovery when the employee asserts a statutory discrimination claim].) All remedies (punitive damages, attorney's fees, injunctive relief, and so on) that would be available in court are available in the arbitration ("If you win, you can be awarded anything you might seek

---

[2]Although *Armendariz* was decided before Craig's reply brief was due, Craig did not file a reply brief.

through a court of law"). (*Id.* at pp. 103-104.) The arbitrator is required to issue a written award that is subject to judicial review. (*Id.* at pp. 106-107.) All claims must be arbitrated. (*Id.* at p. 120.)

Brown & Root's arbitration program satisfies *Armendariz*.

### DISPOSITION

The judgment is affirmed. Brown & Root is entitled to its costs of appeal.

Spencer, P. J., and Ortega, J., concurred.