Filed 12/3/13  P. v. United States Fire Ins. Co. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>UNITED STATES FIRE INSURANCE COMPANY,<br><br>    Defendant and Appellant. | F064778<br><br>(Stanislaus Super. Ct. No. 1426608)<br><br>**OPINION** |

-ooOoo-

**FACTS**

APPEAL from a judgment of the Superior Court of Stanislaus County.  Shawn D. Bessey, Judge.

E. Alan Nunez for Defendant and Appellant.

John P. Doering, County Counsel, and Alice E. Mimms, Deputy County Counsel for Plaintiff and Respondent.

-ooOoo-

**FACTS**

Appellant, surety United States Fire Insurance Company (appellant), through its bail agent Garcia Family Bail Bonds, Inc. (the bail agent), posted bail bond number U100-20304496 in the amount of $100,000 to release defendant Miguel Marquez

Rodriguez[1] from custody (the bond). Defendant failed to appear in court on January 28, 2011, and a bench warrant was issued.

The clerk's transcript contains a one-page "Notice of Forfeiture and Certificate of Mailing" dated January 31, 2011 (the notice). The notice advises that defendant failed to appear on January 28, 2011, and the superior court had ordered bail forfeited. The notice was addressed to appellant and the bail agent. At the bottom of the notice, there is the heading "CERTIFICATE OF MAILING" under which the following text appears:

> "I, Jessica Misasi[,] Deputy Clerk of the Superior Court of the State of California, County of Stanislaus, and not a party to the within action, served a true and correct copy of this Notice of Forfeiture and Certificate of Mailing on the above-referenced bail-agent and surety pursuant to Penal Code § 1305 by depositing a true copy thereof in the United States mail in Modesto, California on 1/31/11. [¶] I declare under penalty of perjury that the foregoing is true and correct."

A signature appears immediately below this text.

**Appellant's First Motion to Vacate**

On August 4, 2011, appellant filed a motion to vacate forfeiture and exonerate bail. (See Pen. Code,[2] § 1305.) In support of its motion, appellant filed the declaration of Jose J. Gonzales, an employee of the bail agent (the Gonzales declaration). The declaration stated that Fairmont Specialty Company sent him an "open forfeiture list."[3] He saw bond number U100-20304496 on the list, but "there was no notice of forfeiture in [his] file."

In its motion, appellant cited section 1305, subdivision (b)(3), which releases a surety of all obligations under a bond when the court clerk "fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond." (§ 1305,

---

[1] Elsewhere in the record, defendant is referred to as "Miguel Rodriguez Arceo."

[2] All undesignated statutory references are to the Penal Code.

[3] Presumably, this is a list generated by a surety listing all pending forfeitures pertaining to a particular bail agent.

subd. (b)(3).) Appellant contended the bail agent's declaration was circumstantial evidence that the notice was not mailed. Moreover, appellant argued that the clerk's certificate of mailing was not sufficient evidence of mailing. The motion posited that the certificate violated Code of Civil Procedure section 1013a, subdivision (4) because it did not state the notice had been mailed "with the postage thereon fully prepaid." (Code Civ. Proc., § 1013a, subd. (4).)

In the alternative, appellant's August 4, 2011, motion requested an extension of time on the bond under section 1305.4. Jose Gonzales's declaration stated that on July 15, 2011, the defendant's son[4] said his sister knew defendant was in Mexico and "had information about his location there." Gonzales planned to meet with the sister on August 5, 2011.

Apparently, this motion was subsequently taken off calendar pursuant to a stipulation.[5]

**Appellant's Second Motion to Vacate**

On October 4, 2011, appellant filed a second motion to vacate forfeiture and exonerate the bond. In this motion, appellant contended defendant had been located in Cojita de la Paz, Michoacan, Mexico, temporarily detained and positively identified by a local law enforcement agent in an affidavit. Appellant argued the bond should be exonerated under section 1305, subdivision (g).

The motion included a declaration from Crystal Rorabaugh, an office manager in appellant's counsel's office. The declarant stated that she mailed a letter to the

---

[4] Defendant's son was also the bond's indemnitor.

[5] Both parties' briefs indicate the motion was taken off calendar. However, the portion of the record cited by the parties merely reflects that the forfeiture period on the bond was extended to November 2, 2011. It does not indicate the motion was taken off calendar. Regardless, we will deem this fact admitted by the parties. (See *Franklin v. Appel* (1992) 8 Cal.App.4th 875, 893, fn. 11, superseded by statute on another ground as stated in *Arnall v. Superior Court* (2010) 190 Cal.App.4th 360.)

Extradition Unit of the Stanislaus County District Attorney's office informing them that defendant had been located and positively identified in Mexico. The letter sent to the district attorney attached an affidavit purportedly executed by a Jorge Enrique Alvarez Ortiz (the Ortiz declaration). A translated version of that affidavit indicated that Ortiz was a sworn police officer for the city of Cotija de la Paz. It further indicated that defendant was temporarily detained in Ortiz's presence. Ortiz "verified the identification" on August 17, 2011. The affidavit also stated that the identification "was done by" Ortiz and a Daniel Gonzàles Silva. The affidavit contained a phone number for the "Municipal Police."

A photograph of defendant and his fingerprints were also mailed to the district attorney, according to Rorabaugh's declaration.

The hearing on the October 4, 2011, motion was initially set for October 18, 2011. The parties stipulated to continue the hearing, and "toll time on the bond," to and including November 29, 2011.[6] The parties later stipulated to continuing the hearing from November 29, 2011, to December 13, 2011.

People's Opposition

The People opposed the motion, arguing that they had not been "informed of the location of the defendant" as required by section 1305, subdivision (g). Ortiz's affidavit merely indicated that defendant had been "temporarily detained" and thus did not necessarily convey defendant's location. The People also argued Ortiz's affidavit was unreliable, there was no evidence defendant had been detained by a bail agent, and that the forfeiture period should not be tolled in order to complete extradition.

---

[6] The stipulation indicates that "[o]n or about September 30, 2011" appellant filed another motion to vacate forfeiture and exonerate bail. The record contains no motion filed on September 30, 2011. Thus, the stipulation is presumably referring to appellant's second motion to vacate, filed on October 4, 2011. Both parties' briefs assume this is the case.

4.

The People's opposition included the declaration of Steven P. Jacobson, an investigator with the district attorney's office. Jacobson determined the correct area code for Cotija de la Paz was 394. Ortiz's declaration had indicated the municipal police telephone number had a 353 area code.

Jacobson and the county's victim/witness liaison, a fluent Spanish-speaker, called the Cotija de la Paz Municipal Police Department. They asked to speak with the head of the department and were transferred to the watch commander. The watch commander stated that neither Jorge Enrique Alvarez Ortiz nor Daniel Gonzalez Silva were sworn law enforcement officers with the Cotija de la Paz Municipal Police. The watch commander did not know either man. The county's victim/witness liaison learned that the number listed in Ortiz's affidavit as belonging to the municipal police department was actually a cellular telephone number.

Jacobson requested and received the latent fingerprints from the identification affidavit from Rorabaugh's office. The fingerprints matched defendant's fingerprints. Jacobson's declaration concluded with the following:

> "Based on the initial investigation into this Identification Affidavit, the information contained therein is insufficient and unreliable to contact the Office of International Affairs (OIA). Until the information contained in the Identification Affidavit can be confirmed, and until a permanent location for the Defendant has been provided, such information is insufficient and unreliable to send to OIA to request assistance with extradition."

Appellant's Supplemental Points and Authorities

Appellant filed supplemental points and authorities in support of the motion to vacate. Appellant argued the trial court lost jurisdiction over the forfeiture because the clerk had failed to mail notice to the bail agent. (See § 1305, subd. (b)(3).) Appellant also requested the court extend time on the bond under section 1305.4 to allow for the return of the defendant to custody.

5.

<u>People's Opposition to Appellant's Supplemental Points and Authorities</u>

The People filed an opposition to appellant's supplemental points and authorities. The People contended that appellant's jurisdictional argument and request for an extension of time on the bond had been untimely raised. The People also countered appellant's supplemental arguments on the merits.

The People's opposition included a declaration executed on December 5, 2011 by Jessica Misasi, a deputy clerk with the Stanislaus Superior Court (the Misasi declaration). Misasi's declaration described the standard court practices for collecting and mailing notices of forfeitures. It explained that clerks place the envelope containing forfeiture notices into a basket labeled "outgoing mail." "Stanislaus County employees/agents" then place postage fully prepaid on the envelopes. Misasi declared that she "followed standard court practices when mailing the notices of forfeiture on January 31, 2011," sealed the envelope with the forfeiture notices "in this instance," and that no notice of forfeiture on the bond was returned to the court as undeliverable.

The People requested the opportunity to present the oral testimony of Mark Garcia via cross-examination.

<u>Appellant's Reply Brief</u>

Appellant filed a reply brief to the People's opposition. In the brief, appellant withdrew his request to exonerate bail "based on" the Ortiz affidavit.[7]

Appellant also filed a declaration from Leonard Padilla dated December 13, 2011. Padilla stated that he contacted an associate in Mexico who "made contact" with defendant. The declaration provided the address where Padilla's associate had met

---

[7] Specifically, the reply brief stated: "Since the District Attorney's investigator was unable to confirm the Law Enforcement status of the affiant on the 1305(g) affidavit, the moving party hereby withdraws the request to exonerate bail based on that documentation and requests an extension of time. Since the 1305(g) exoneration request is being withdrawn, the People's request to conduct further oral testimony regarding this documentation should be denied."

6.

defendant. Padilla spoke with defendant on the telephone. Defendant eventually agreed to return to Modesto "after the holidays." The substantive portion of the declaration concludes:

> "My associates then gathered some verifying information, i.e. the defendant's photograph, fingerprints, and verification by law enforcement that the defendant lives at that address, etc. The defendant's new wife has two relatives that are law enforcement in that area, and therefore my associates treaded very lightly so as not to infringe on the defendant's legal rights in Mexico. Exhibit 'AA' Photographs" (Original underline.)

Three photographs were attached to Padilla's declaration, two of which ostensibly depicted defendant while another depicted a road sign reading "Cojumatlan."

### December 13, 2011, Hearing

At a hearing on December 13, 2011,[8] the court extended the forfeiture time period to January 10, 2012, and set a hearing for that date.

**Leonard Padilla's December 30, 2011, Declaration**

On January 4, 2012, appellant filed a declaration from Leonard Padilla dated December 30, 2011.[9] The declaration states, "with certainty I can declare that the defendant is in [Cojumatlan] in the state of Michoacàn, Mexico and his residential address and telephone number." Defendant had told Padilla "his ability to return to the United States has been curtailed because the arresting officers on this matter confiscated the paperwork which confirmed his legal status in the United States." The declaration stated that Padilla was on the telephone with defendant as Padilla's associates gathered information required by section 1305, subdivision (g).

A document entitled "Declaracion Jurada de Identificacion" was attached to Padilla's declaration. Another document, apparently depicting two fingerprints, was also

---

[8] The appellate record does not contain the reporter's transcript from this hearing.

[9] The declaration was dated December 30, 2011, but was filed January 4, 2012.

7.

attached to Padilla's declaration. Underneath the two fingerprints is the handwritten text: "Miguel Arceo R."

On December 12, 2011, Padilla notified the district attorney's office of defendant's location in Cojumatlan, Mexico. The declaration states: "As of December 29, 2011[,] when I checked, there had been no efforts by either the District Attorney, or the County Counsel, or any authority in Stanislaus County for the extradition of the defendant in this matter to the United States."

**Appellant's Third Motion to Vacate**

On January 5, 2012, appellant filed a third motion to vacate. Appellant argued the bond should be exonerated under section 1305. The motion's points and authorities do not raise the contention that the court clerk failed to mail notice of the forfeiture to the bail agent. However, the motion's notice states the motion was "made on the grounds of Penal Code § 1305 and that the court lost jurisdiction over the bond."

Crystal Rorabaugh's Declaration

Appellant also filed another declaration from Crystal Rorabaugh. She declared that she sent a "completed 1305(g) packet" to the district attorney's office including a "1305(g) affidavit," photographs and fingerprints. Finally, she stated that she had not "received an election from the Office of the District Attorney."

A translated version of the "1305(g) affidavit" was attached to Rorabaugh's declaration. The translated version indicated the original affidavit was signed by "Julio Cesar Ayard Rodriguez." (the Rodriguez Affidavit) The declaration states: "I verified the identity of Miguel Arceo R."[10] It further states that "[t]he individual resides at Nicolas Bravo, #180, Col. Centro." Unlike the declaration attached to the prior motion, this declaration does not state that defendant had been temporarily detained.

_____

[10] There is a place where the affiant can indicate the date they verified the identity of the subject, which was left blank. The declaration itself was dated above the signature line as December 10, 2011.

8.

<u>Leonard Padilla's January 5, 2012, Declaration</u>

Appellant also filed another declaration from Padilla (filed Jan. 6, 2012), this one dated January 5, 2012. Some of the information from Padilla's December 12, 2011, declaration was repeated. For example, Padilla declared he spoke with defendant via telephone and that defendant "was willing to return after the holidays."

The declaration also repeated some of the information from the December 30, 2011 declaration. For example, Padilla indicated that "when [he] checked, there had been no efforts by either the District Attorney, or the County Counsel, or any authority in Stanislaus County for the extradition of the defendant …."

<u>People's Opposition</u>

The People opposed the motion arguing the motion "lacks evidentiary support as the elements" of section 1305, subdivision (g) "have not been met." Specifically, the People argued (1) the prosecuting agency had not made an election regarding extradition, and (2) the law enforcement affidavit was incomplete, insufficient and unreliable.

**January 10, 2012, Minute Order**

In a January 10, 2012, minute order, the superior court granted appellant's request to "extend time" to January 31, 2012. The order set a hearing date for the "original" motion regarding "mailing and notice" as well as the "new" section 1305, subdivision (g) motion.

**Padilla's January 31, 2012, Declaration**

On January 31, 2012 appellant filed another declaration from Padilla. The declaration stated Padilla had been informed that "as of today, January 31, 2012, the defendant was being detained as being in Mexico illegally, and transported to an American Port of Entry where he would be turned over to American law enforcement due to the outstanding warrant for his arrest on this matter."

**Superior Court Denies Appellant's Motion(s) to Vacate**

On February 14, 2012, the court held a hearing on appellant's motion(s) to vacate. At the hearing, appellant's counsel indicated that the effort to have defendant deported from Mexico to the United States "didn't work" because "without the cooperation of the law enforcement, which has to start with the local DA, they just weren't able to get him in custody or deported."

The court proceeded to rule on the merits. With respect to the alleged lack of forfeiture notice to the bail agent, the court found "the mailing was sufficient in this [in]stance." The court found that the court clerk "complied with the mailing requirements."

Both counsel then argued the section 1305, subdivision (g) issue. The court then denied the motion. The court noted the information in Ortiz's affidavit differed from the Rodriguez affidavit, including information regarding defendant's location. The court concluded the discrepancy indicated either that "the first information as to the address was incorrect totally, or we have somebody that's in motion within Mexico …."

The court also stated that the district attorney was investigating the information regarding defendant's whereabouts, which "indicate[d] to the Court that … they are going through the election process. It's not that they're not choosing to not extradite or are they choosing to extradite at this point, but they certainly are looking into it." The court said it "[found] it hard to think that in this case I can find that the District Attorney's Office is purposely trying to preclude the surety from obtaining or fulfilling their obligations under 1305(g)."

A summary judgment was entered in favor of the People and against appellant United States Fire Insurance Company in the amount of $100,000.00.

## DISCUSSION

Appellant contends the court lost jurisdiction over the bond under section 1305, subdivision (b)(3), because notice of the forfeiture was not properly mailed to the bail

agent. The trial court found otherwise, and that finding was supported by substantial evidence. Therefore, we reject this claim in section I, *post*.

Appellant also argues that once the surety has complied with the detention and affidavit requirements of section 1305, subdivision (g), and notifies the prosecuting agency of the defendant's location, the district attorney *must* make an election as to whether or not it will seek extradition. Moreover, appellant asserts that if the prosecuting agency fails to make such an election, it must be deemed an election not to extradite. We find these contentions unsupported by the statutory language and reject it in section II, *post*.

Though it is not raised as a separate issue, appellant also apparently contends the trial court should have tolled time on the bond pursuant to section 1305, subdivision (e). The record contains no request by appellant that the court toll time under subdivision (e). Appellant has failed to show the court erroneously failed to grant the unrequested relief under subdivision (e).

## I.

### SUBSTANTIAL EVIDENCE SUPPORTED THE TRIAL COURT'S FINDING THE NOTICE HAD BEEN MAILED

A trial court's finding that proper notice of forfeiture was given is reviewed for abuse of discretion. (See, e.g., *People v. Safety Nat. Cas. Corp.* (2010) 186 Cal.App.4th 959, 973.) If the finding is supported by substantial evidence, there is no abuse of discretion. (See, e.g., *ibid*.)

Here, the court made a factual finding that the clerk had complied with the mailing requirements. There was substantial evidence to support that finding. The certificate of mailing, executed under penalty of perjury by the clerk, stated that she served the notice of forfeiture on the bail agent pursuant to section 1305. This certificate, along with her declaration, was substantial evidence that the notice was so mailed. Thus, the court's finding was supported by substantial evidence.

11.

Appellant contends otherwise, arguing the clerk's certificate of mailing does not comply with Code of Civil Procedure section 1013a.

First, we strongly question whether the certificate of mailing needed to comply with Code of Civil Procedure section 1013a in order to avoid triggering section 1305, subdivision (b)(3). By its plain language, subdivision (b)(3) only applies where the clerk "fails to mail" the notice. Subdivision (b)(3) does not mention the Code of Civil Procedure nor certificates of mailing. (§ 1305, subd. (b)(3).)[11] It is the *fact* of mailing rather than *proof* of mailing that is relevant to section 1305, subdivision (b)(3).

More importantly, we are reviewing the court's finding that the mailing occurred, not the certificate of mailing itself. Thus, deficiencies in the certificate of mailing are only relevant to the extent, if any, they render the evidence insufficient to sustain the court's finding. Here, the certificate does not comply with Code of Civil Procedure section 1013a insofar as it does not indicate the "envelope was sealed" with "postage thereon fully prepaid." (Code Civ. Proc., § 1013a, subd. (4).) This fact may slightly weaken the certificate's adequacy to support a finding the notice was properly mailed. But we need not resolve whether those deficiencies rendered the certificate, by itself, insufficient to support the court's finding. Other evidence was presented on those issues. As we will explain, that additional evidence supported an inference that the envelope was in fact sealed and postage thereon fully prepaid.

In Misasi's December 5, 2011, declaration, she specifically states, "I habitually seal all envelopes I prepare for mailing, *which would include the envelope with the forfeiture notices in this instance.*" (Italics added.) Regarding postage, Misasi declared that she places the envelopes with the notices into a basket and other county employees

_____

[11] Outside of subdivision (b)(3), subdivision (b) does direct the clerk to execute a certificate of mailing. (§ 1305, subd. (b).) But, the statute provides for no consequence if the certificate of mailing is not executed. Subdivision (b)'s provisions providing for a release of the surety's obligations only apply where the clerk "fails to mail" the notice within a certain time frame and to certain addressees. (§ 1305, subds. (b)(1)-(3).)

12.

"place postage fully prepaid on the envelopes" and "deposit the mail for mailing in the U.S. Postal Service." No notices were returned to the court as undeliverable. Misasi's declaration and the certificate of mailing are sufficient to support the court's finding on appeal.

It is true, as appellant argues, that there was other evidence regarding the mailing issue. But, on substantial evidence review, "reversal … is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) Thus, reversal is not appropriate here even though Gonzales, the bail agent's employee, declared that he could not find a notice of forfeiture in his files. Even assuming this evidence could have supported an inference that the notice was not mailed, the finder-of-fact chose not to make such an inference. And, because the fact finder's contrary inference was supported by other substantial evidence (i.e., the certificate of mailing and Misasi's declaration), we will not disturb it on appeal.

A.     <u>EVEN THOUGH THE *PRESUMPTION* OF RECEIPT MAY NOT HAVE APPLIED, THE TRIAL COURT REMAINED FREE TO *INFER* RECEIPT FROM THE EVIDENCE</u>

Evidence Code section 641 provides, "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." (Evid. Code, § 641.) Appellant discusses conclusive versus rebuttable presumptions, contending Evidence Code section 641's presumption is rebuttable. This is correct, but irrelevant.

Even assuming, arguendo,[12] that Gonzales's declaration negated the presumption of receipt set forth in Evidence Code section 641, we would still affirm the trial court's

---

[12] The determination of whether Evidence Code section 641's presumption has been negated is itself a question of fact for the trial court. (*Glasser v. Glasser* (1998) 64 Cal.App.4th 1004, 1010-1011. Accord, *Tremayne v. American SMW Corp.* (1954) 125 Cal.App.2d 852, 854; *Slater v. Kehoe* (1974) 38 Cal.App.3d 819, 833 ["this determination is to be made by the trial judge"].) Given the discussion that follows, we need not decide whether the trial court impliedly found the presumption of receipt had

finding.  "The disappearance of the presumption does *not* mean there is insufficient evidence to support the trial court's finding."  (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421, original italics (*Craig*).)  " '[I]f "the adverse party denies receipt, the presumption is gone from the case.  *The trier of fact must then weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the letter was received.*" ' "  (*Ibid.*; accord, *Bear Creek Master Ass'n v. Edwards* (2005) 130 Cal.App.4th 1470, 1486.)  In other words "the disappearance of the presumption is moot" on appeal; "[i]ts only relevance was in the trial court, where the trier of fact (in this context, the court) was required to determine the contested fact…without regard to the presumption and solely on the basis of the conflicting evidence .…"  (*Craig*, *supra*, 84 Cal.App.4th at p. 421.)  Thus, even if Gonzales's declaration successfully negated the presumption, the trial court was still free to find that the notice was in fact mailed.  (See Evid. Code, § 604; see also, *Bear Creek Master Ass'n*, *supra*, 130 Cal.App.4th at p. 1486; *Craig*, *supra*, 84 Cal.App.4th at p. 421.)

Appellant argues:  "If the presumption of receipt does not exist, the only evidence before the court is the evidence which supports a finding that the notice was not received."  This is incorrect, Gonzales's declaration was not the only evidence before the court.  The certificate of mailing and Misasi's declaration were also before the court.  While the certificate of mailing no longer gave rise to a *presumption* of receipt, it still gave rise to an *inference* of receipt.  "Although the presumption disappears where, as here, it is met with contradictory evidence, inferences may nevertheless be drawn from the same circumstances that gave rise to the presumption in the first place."  (*Craig*, *supra*, 84 Cal.App.4th at p. 421; see also Evid. Code, § 604.)  Thus, the court was free to accept the inference of receipt arising from the certificate of mailing and Misasi's

_____

*not* been negated or whether such an implied finding would be supported by substantial evidence.

14.

declaration. Its decision to do so "is binding on this appeal." (*Craig*, *supra*, 84 Cal.App.4th at p. 421.)

B. *BONZER v. CITY OF HUNTINGTON PARK*

Appellant relies heavily on the Second District's decision in *Bonzer v. City of Huntington Park* (1993) 20 Cal.App.4th 1474 (*Bonzer*). We respectfully disagree with the *Bonzer* decision. In *Bonzer*, there was conflicting evidence regarding the mailing of a notice of a motion. A proof of service declaration indicated that the declarant "was familiar 'with [her employer's] practice of collection [*sic*] and processing correspondence for mailing' and '[u]nder that practice it would be deposited with U.S. Postal service … in the ordinary course of business.' " (*Bonzer*, *supra*, 20 Cal.App.4th at p. 1478, italics omitted.)

The appellants in *Bonzer* offered six declarations in support of their contention that they did not receive the notice. (*Bonzer*, *supra*, 20 Cal.App.4th at p. 1479.) One of the purported recipients of the notice was the chief of police. (*Id.* at p. 1477.) A declaration from Barbara Peckler showed that she was the only person who received the chief's mail, and that she did not receive the notice. (*Id.* at p. 1479.) The chief of police similarly submitted a declaration that he had no recollection of receiving a notice. (*Id.* at p. 1479.)

The *Bonzer* court noted that appellant's evidence rebutted Evidence Code section 641's presumption. (*Bonzer*, *supra*, 20 Cal.App.4th at p. 1481.) We do not disagree with that conclusion. However, the court then held that under Evidence Code section 604, the "only remaining effect of the 'Proof of Service' declaration was to enable the trial court to draw 'any inference that may be *appropriate*.' ([Evid. Code, § 604.])" (*Bonzer*, *supra*, 20 Cal.App.4th at p. 1481.) The court concluded that "[a]ny inference, in the face of appellants' declarations, that the subject notices were actually received is, as a matter of law, *inappropriate*." (*Ibid.*, original italics.)

15.

We disagree with *Bonzer*'s holding because it results from a misapplication of the appropriate standard of review.[13] Essentially, the trial court in *Bonzer* found the appellants' declarations "inadequate" (*Bonzer, supra*, 20 Cal.App.4th at p. 1477) while the appellate court found them to be "credible" (*id.* at p. 1482). In this type of dispute, the trial court's determination prevails unless it is not supported by substantial evidence. The aspects of substantial evidence review relevant here were succinctly and correctly explained in another Second District case, *Canister v. Emergency Ambulance Services* (2008) 160 Cal.App.4th 388: "We look at the evidence in support of the successful party, *disregarding any contrary showing*, and we resolve all conflicts in favor of the respondent …. When two or more inferences can be reasonably deduced from the facts, we do not substitute our deductions for those of the finder of fact. [Citation.] We must affirm if substantial evidence supports the trier of fact's determination, even if other substantial evidence would have supported a different result. [Citation.]" (*Id.* at p. 394, italics added.)[14]

Contrary to these principles of substantial evidence review, the *Bonzer* court considered both respondent's *and appellants'* evidence. The Court of Appeal concluded the lower court's resolution of the conflicting evidence was incorrect "*in the face of appellants'*" evidence. (*Bonzer, supra*, 20 Cal.App.4th at p. 1481, italics added.) But, as

---

[13] On appeal from an order denying a motion under Code of Civil Procedure section 473, appellate courts review factual findings for substantial evidence. (E.g., *Cowan v. Krazyman* (2011) 196 Cal.App.4th 907, 915; *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1252.)

[14] This type of deferential review applies to factual findings predicated on declarations. "Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, fn. omitted.) "Where affidavits in support of a motion are controverted by opposing declarations, the duty of determining the credibility of affiants is within the exclusive realm of the trial court …." (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 493.)

16.

explained *ante*, the appellate court should not have made its substantial evidence determination "in the face of appellants' " (*ibid*) evidence. It should have only looked to respondent's evidence (i.e., the proof of service) to determine whether *it* was substantial evidence supporting the trial court's finding.

Thus, we respectfully disagree with *Bonzer* and will not follow it here. The trial court is the "sole arbiter of the facts" and this court has "no power on appeal to weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or the reasonable inferences that may be drawn from the evidence." (*Navarro v. Perron* (2004) 122 Cal.App.4th 797, 803.) Here, the inference that the clerk properly mailed the notice to the bail agent was supported by substantial evidence. Our inquiry ends there, despite the existence of contrary evidence.

## II.

### THE TRIAL COURT PROPERLY DENIED APPELLANT'S MOTION TO VACATE UNDER SECTION 1305, SUBDIVISION (g)

A.    RODRIGUEZ'S LAW ENFORCEMENT AFFIDAVIT DOES NOT INDICATE DEFENDANT WAS "TEMPORARILY DETAINED" IN HIS PRESENCE

Section 1305, subdivision (g) only applies to cases where the defendant is "temporarily detained … in the presence of a local law enforcement officer…." (§ 1305, subd. (g).) Here, the only law enforcement affidavit before the court was the Rodriguez affidavit.[15] That affidavit avers that Rodriguez was "an officer of the peace" in "Cojumallan" [*sic*], and that he verified the identity of "Miguel Arceo R." But, it does not indicate that defendant was "temporarily detained" in his presence. Thus, this was not a "case" to which section 1305, subdivision (g) applied.

---

[15] The prior section 1305, subd. (g) motion with the Ortiz declaration had been withdrawn.

17.

B.     <u>THE PROSECUTOR HAD NOT ELECTED NOT TO SEEK EXTRADITION AND THEREFORE, SUBDIVISION (g) DID NOT APPLY</u>

Section 1305, subdivision (g) only applies in "cases … where … the prosecuting agency elects not to seek extradition.…" (§ 1305, subd. (g).) Here, the prosecution had not made an election with respect to extradition. Therefore, this is not a "case[] … where … the prosecuting agency elects not to seek extradition.…" (§ 1305, subd. (g).)[16] Thus, subdivision (g) does not apply and the trial court correctly denied the motion.

Appellant argues that once the prosecuting agency is informed of defendant's location, it "must make an election" and a failure to do so must be deemed an election not to extradite. Subdivision (g) contains no such requirement. Electing not to extradite and making no election regarding extradition are simply not the same. One is an act, the other is an omission or failure to act. Thus, language specifically describing one (i.e., electing not to extradite) does not encompass the other (i.e., *not* electing not to extradite). When subdivision (g) states that it applies to "cases … where … the prosecuting agency elects not to seek extradition …" it means precisely that. By its plain terms, the provision does not encompass cases where the prosecuting agency does *not* so elect.

Appellant makes interesting arguments regarding why prosecuting agencies *should* be required to make an election regarding extradition within a certain timeframe.[17] But

---

[16] The trial court found that the District Attorney's office was "going through the election process. *It's not that they're not choosing to not extradite*…." (Italics added.)

[17] Appellant claims that often prosecuting agency's "prefer[] … the money from forfeiture of bail," which "motivates a decision not to extradite." Appellant cites no evidence in support of this claim. Even assuming it were true, it might, at most, counsel in favor of amending subdivision (g) to require a prosecutorial election within a certain time frame or to expand its scope to cases where the prosecuting agency fails to make any election regarding extradition within a certain number of days. But the role of this court in this case begins and ends with the determination that subdivision (g), as currently worded, only applies to "cases … where … the prosecuting agency *elects* not to seek extradition.…" (§ 1305, subd. (g), italics added.) We express no view regarding the merits of appellant's policy arguments. Moreover, regardless of the alleged potential for gamesmanship by prosecuting agencies, that concern is arguably absent from this case.

18.

we are not concerned with what the Legislature should have done, only what it has done. (Cf. *County of San Diego v. State* (2008) 164 Cal.App.4th 580, 597.)  In subdivision (g), the Legislature only provided for exoneration in "cases … where … the prosecuting agency elects not to seek extradition.…"  (§ 1305, subd. (g).)  This is not such a case.

## DISPOSITION

The judgment is affirmed.

_____
Poochigian, J.

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Detjen, J.

_____

On the facts before it, the trial court found it "hard to think" that the district attorney's office was "purposely trying to preclude the surety from obtaining or fulfilling their obligations under 1305 (g)."