Filed 7/20/15  In re Leonardo H. CA3

<u>**NOT TO BE PUBLISHED**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re LEONARDO H. et al., Persons Coming Under the Juvenile Court Law. | C077280 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.V.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD234728, JD234729) |

This appeal arises from a finding of jurisdiction pursuant to Welfare and Institutions Code section 300.[1]  S.V., mother of minor children Leonardo H. and Patrick H., challenges the juvenile court's jurisdictional finding, arguing it is not

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

supported by substantial evidence and relies on a misapplication of the burden-shifting provision of section 355.1, subdivision (a).[2]  We conclude insufficient evidence supports the juvenile court's jurisdictional findings.  Therefore, we reverse the juvenile court's jurisdictional orders and vacate all subsequent orders as moot.  (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1005.)

## FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2014, mother took Leonardo, then three and a half months old, to the hospital because he was having trouble breathing.  There, Leonardo was provided a breathing treatment and X-rays were taken.  However, the X-rays were not read until mother brought Leonardo to the hospital again on May 14, 2014, because his breathing problems persisted.[3]  It was then discovered that the X-rays taken on April 24, 2014, revealed three rib fractures, and additional X-rays were taken that confirmed Leonardo had sustained fractures to ribs six, seven, and eight, on the child's left side near his belly.  The treating doctor determined the infant's injuries were indicative of nonaccidental trauma and, because they were already healing, had been sustained at least a week before the initial X-rays were taken, but that it would be difficult to date the injuries.  Another doctor, who was consulted by the Sacramento County Department of Health and Human Services (the Department), also concluded the injuries were consistent with nonaccidental trauma.  The most common cause of this type of injury is forcefully squeezing a baby's chest to quiet the child.  However, the consulting doctor indicated the injuries also could have been sustained if the child had fallen from a height of two stories, had been run over

---

[2]  The presumed father (father) also appealed the trial court's order, but his appeal was dismissed.

[3]  The radiologist's report following the April 24, 2014, doctor's visit indicates "[l]imited examination due to positioning, possible artifact from fingers of person holding patient over left lower ribs versus rib fractures.  Recommend repeat [anteroposterior] [(front-to-back)] view to include this region."

2

by a car, had fallen backward in a highchair, or had been in a walker and fallen off the stairs.

Following the May 14, 2014 hospital visit, Leonardo and his older brother Patrick, then six months and five years old, respectively, were detained and placed into protective custody. Thereafter, the Department filed jurisdictional petitions for both children pursuant to section 300, subdivisions (a), (b), (e), and (j).[4] The factual allegations in the petitions related to Leonardo's alleged nonaccidental injury and to a domestic violence incident between the parents years earlier at which Patrick had been present.

A contested jurisdictional hearing ensued, at which mother, father, the investigating social worker, and medical experts testified. The Department and mother each presented expert witness testimony by a medical doctor. The Department's expert opined that an injury like Leonardo's most commonly occurs when a child's chest is forcefully squeezed, either in an attempt to quiet the baby when it cries inconsolably or during a violent shaking. The baby would cry or show some sign of discomfort while the ribs were breaking, and would probably cry, be fussy, and be irritable for a few hours

---

[4] Section 300 provides the bases for the juvenile court's jurisdiction over children. Subdivision (a) of section 300 provides jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." Subdivision (b)(1) of section 300 applies where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ." Subdivision (e) of section 300 bestows jurisdiction where a child less than five years old "has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child." And subdivision (j) of section 300 affords jurisdiction where "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), . . . [or] (e) . . . , and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

after the fracture, but afterwards would likely not demonstrate any symptoms. The doctor testified that unless a caretaker was the one to inflict the injury, they would not be expected to know it had occurred based on the baby's behavior. Mother's expert agreed the most common way such an injury is inflicted is "aggressive or violent squeezing usually done in anger." He also opined that, based on the evidence of healing in the April 24 X-rays, the fractures had occurred at least a couple of weeks prior, and possibly even longer. He also agreed that, other than the person inflicting the injury, it would be difficult without X-rays to know the injury had been inflicted because there would be no externally visible evidence of the injury, and the child's irritability and crying would be difficult to perceive as being caused by the injury.

Both parents testified at the contested jurisdictional hearing that they did not injure Leonardo, did not know who did, did not believe a family member could have done so, and had come to suspect the daycare. In early March 2014, mother had returned to work after giving birth to Leonardo in early January. She then enrolled Patrick and Leonardo in daycare, where they remained Monday through Friday from 8:30 a.m. to 6:00 p.m. until she reduced to part-time work, and then the children were at daycare when she was working. Mother had selected the daycare after checking the baby class and confirming background checks are performed on all caretakers. Maternal grandmother also cared for the children occasionally, and maternal aunt and uncle helped, but were not left alone with the children. Maternal grandmother had not seen any bruise or mark on Leonardo or Patrick, did not know how the injury had occurred, and had no concerns about either the paternal or maternal family, but did have some concerns that Leonardo's diaper had not been changed at the daycare. Maternal uncle noticed Leonardo would cry when placed in his bouncer in April 2014, but would stop crying when picked up.

Leonardo and Patrick were left in father's care at paternal grandmother's house during the week of March 28 to April 5, 2014. During that week, paternal grandmother

4

cared for the children while father worked. Paternal grandmother saw no marks or bruises on Leonardo, noted he was fine and smiling when she had him, and had no concerns about mother or father hurting the children. According to father, Leonardo was sick when mother dropped him off at the beginning of the week, and became sicker as the week went on; he was wheezing, not sleeping well, and was fussy. There was one night in particular while father was caring for the children that father called mother because Leonardo was crying inconsolably. However, once father placed Leonardo over his shoulder as mother suggested, the baby stopped crying and fell asleep. Father expressed no concerns about any family member, maternal or paternal. Father had lived with mother and Patrick when Patrick was a baby and had helped care for him without becoming frustrated. After Leonardo's injury, father expressed concerns about the daycare because online reviews had mentioned toddlers stepping on infants.

There was evidence that father and mother had a domestic violence incident in December 2010, for which Patrick was present. In that incident, mother became physical, destroyed father's apartment, and was placed on a 72-hour hold. Mother had cut her arm with a knife, and had begun cutting herself a few days earlier to release her anger. Mother also had bruises on her right thigh, a bruise on her left hip, and a lump above her right ear. Mother acknowledged at the contested jurisdictional hearing that there had been repeated incidents of physical abuse between her and father, but she reported the incidents ended with the end of their relationship.

Patrick was interviewed, and indicated he did not know what happened to Leonardo, that he felt safe with all family members, that he was disciplined with timeouts, and that he wanted more visits with his parents while detained. Patrick had also not disclosed any concerns to the daycare, where it was reported both children "appeared happy, healthy, and clean." None of the daycare teachers had any concerns about any family member, had seen any bruises or marks on Leonardo, had seen him demonstrate

pain or discomfort, or knew of any incidents in which Leonardo had fallen or been injured by another child.

There was no evidence anyone but paternal grandmother had any history with child protective services (CPS) or any criminal history, and it was unknown what paternal grandmother's history was. The investigating social worker acknowledged she did not know when the injury occurred and could not answer whether it possibly occurred in the daycare. Nonetheless, she recommended a finding of jurisdiction and removal of the children because the parents would not or could not explain the injuries, and, in her opinion, "the parents are liable and should or have known how those injuries . . . came about."

At the close of the Department's case-in-chief, on mother's motion, the juvenile court dismissed the allegations premised on subdivisions (a), (e), and (j) of section 300 as to Leonardo, and the allegation premised on subdivision (a) of section 300 as to Patrick. The juvenile court implicitly found there was insufficient evidence that either parent had inflicted the injury nonaccidentally to sustain a jurisdictional allegation based on section 300, subdivision (a).[5] And, the juvenile court also dismissed "as too remote and too circumstantial" the (j) allegation as to Leonardo, which alleged Leonardo was at risk of

---

[5] As noted above, the juvenile court dismissed as unsustainable the allegations premised on section 300, subdivision (a), which would have required a showing by a preponderance of the evidence that one of the parents inflicted nonaccidental injury on Leonardo. In assessing the allegation, the juvenile court noted it was undisputed that Leonardo had suffered serious physical harm inflicted nonaccidentally, but noted confusion about the evidence before it showing either parent had inflicted the injury. The Department argued there was circumstantial evidence that father may have inflicted the injury based on the evening that he called mother while Leonardo was in his care, in light of the expert's testimony that these types of injuries often occur when a child is uncontrollably crying. The juvenile court queried whether that circumstantial evidence was enough to sustain the allegations.

6

suffering serious physical harm because mother and father had engaged in domestic violence in 2010 and 2012 in Patrick's presence.

Following the close of evidence and argument, the juvenile court found true, by a preponderance of the evidence, the jurisdictional allegations based on section 300, subdivision (b)(1) (physical harm resulting from inadequate supervision or protection) as to both children (for Leonardo, premised on the fractured ribs, and for Patrick, premised on Leonardo's fractured ribs and the earlier domestic violence incident), and the allegation based on section 300, subdivision (j) (substantial risk of abuse or neglect based on abuse or neglect of sibling based on the fractured ribs) as to Patrick.

With regard to the allegations premised on Leonardo's injury, the juvenile court found that if a child's bone is broken, whether in the care of the parent or of someone else, "[i]t is the parents' responsibility to prevent and to keep their children from such harm and to not inflict that themselves." And, with regard to the domestic violence allegation, the juvenile court found jurisdiction because the evidence demonstrated an inability to control anger and, despite the lack of an ongoing domestic violence relationship between the parents, that "parents who can act like that with each other could possibly act like that . . . towards their children . . . ."

Therefore, as to Leonardo, the juvenile court found jurisdiction because the parents "failed to provide adequate care, supervision and protection for the child," based on his rib fractures, which were indicative of nonaccidental trauma, that the parents were "unwilling and/or unable" to explain, leaving Leonardo "at substantial risk of suffering serious physical harm." And, as to Patrick, the juvenile court found jurisdiction because the child was at substantial risk of suffering "serious physical harm, abuse and/or neglect" by the parent's failure to protect the children due to Leonardo's unexplained injuries "of a nature that would not ordinarily be sustained except as a result of the unreasonable or neglectful acts or omissions on the part of the child's parents"; because

7

the parents have a history of domestic violence in Patrick's presence, placing him at risk of suffering serious physical harm; and because the injuries to Leonardo were indicative of nonaccidental trauma and were incurred while Leonardo was in the care of the parents.

The juvenile court placed Patrick with the parents under the supervision of the Department, primary residence with mother and visitation with father. The juvenile court removed Leonardo from father's care, placed him within the care of mother under dependent supervision, ordered services for both parents, and precluded mother from leaving Leonardo with anyone else, including relatives, without prior approval of the Department.

## DISCUSSION

Mother contends the jurisdictional orders of the court must be reversed because the juvenile court's findings are premised on a misapplication of section 355.1, subdivisions (a) and (c), and are not supported by substantial evidence.

### I.  Section 355.1 Burden Shifting

Section 355.1, subdivision (a) provides that "[w]here the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300." The presumption created by this subdivision affects the burden of producing evidence.  (§ 355.1, subd. (c).)

#### A.  *The Department Did Not Forfeit Reliance on Section 355.1*

Mother contends the Department could not rely on section 355.1 because it was not alleged in the jurisdictional petition.  We disagree.

8

In support of her forfeiture contention, mother cites *In re A.S.* (2011) 202 Cal.App.4th 237, 242-243. In *In re A.S.*, the reviewing court held that the petitioning agency asserting jurisdiction had forfeited reliance on section 355.1 by failing to cite that section in the jurisdictional petition, thereby failing to provide the parents with sufficient notice. (*In re A.S.*, at p. 243.) However, in that case the parties also did not address section 355.1 or its rebuttable presumption at the jurisdictional hearing, and the juvenile court did not address or make any threshold findings in that regard. (*In re A.S.*, at p. 243.) In contrast, in *In re D.P.* (2014) 225 Cal.App.4th 898, 904, the court held that the mother was given sufficient notice that the petitioning agency intended to rely on section 355.1, despite the fact that the section was not cited in the jurisdictional petition, because the petition's allegations borrowed language from section 355.1.

Here, as in *In re D.P.*, *supra*, 225 Cal.App.4th 898, allegation b-1 in the petition asserting jurisdiction over Patrick incorporates the language of section 355.1, subdivision (a).[6] Additionally, mother was informed that the Department intended to rely on evidence that multiple doctors deduced that Leonardo's injuries were nonaccidental, and mother acknowledged in her pretrial statement that the Department was relying on section 355.1. On this record, we conclude mother had sufficient notice that the Department would rely on the rebuttable presumption codified in section 355.1, subdivision (a). Therefore, the Department did not forfeit reliance on section 355.1.

**B.** *Application of Section 355.1*

Mother further contends the trial court misapplied section 355.1, subdivisions (a) and (c), by construing the provisions as shifting the burden of proof as opposed to shifting the burden of producing evidence. Whether the juvenile court properly applied

---

[6] The allegation states in pertinent part, "Such injuries to the child, [Leonardo H.], are of a nature that would not ordinarily be sustained except as a result of the unreasonable or neglectful acts or omissions on the part of the child's parents."

9

an evidentiary presumption is a question of law that we review de novo. (*In re Quentin H*. (2014) 230 Cal.App.4th 608, 613-614.) We conclude the juvenile court erred in its application of the rebuttable presumption established by section 355.1, subdivisions (a) and (c) by interpreting it as shifting the burden of proof rather than merely affecting the burden of producing evidence.

As noted above, section 355.1, subdivision (a) operates to shift the burden of producing evidence. (§ 355.1, subd. (c).) "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.)[7] " '[W]hen the party against whom such a presumption operates produces some quantum of evidence casting doubt on the truth of the presumed fact, the other party is no longer aided by the presumption. The presumption disappears, leaving it to the party in whose favor [the presumption] initially worked to prove the fact in question.' " (*Estate of Trikha* (2013) 219 Cal.App.4th 791, 803.) Thus, section 355.1 operates to " 'shift[] to the parents the obligation of raising an issue *as to the actual cause of the injury* or the fitness of the home.' " (*In re A.S.*, *supra*, 202 Cal.App.4th at pp. 242-243, quoting *In re James B*. (1985) 166 Cal.App.3d 934, 937, fn. 2.) If the parents do raise rebuttal evidence, the Department maintains the burden of proving the facts alleged in the petition. (*In re A.S.,* at p. 243.)

Here, the juvenile court interpreted section 355.1 as "switch[ing] the burden of proof." In articulating this concept, the juvenile court indicated that, as stated in section

---

[7] In contrast, a rebuttable presumption shifting the burden of proof "impose[s] upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.)

355.1, expert testimony that injuries are "of a nature that would ordinarily not be sustained except as a result of the unreasonable or negligent acts or omissions of either parent who has care or custody of the minor," is prima facie evidence that the juvenile court has jurisdiction over the child. According to the juvenile court's interpretation of *In re A.S.*, *supra*, 202 Cal.App.4th 237, once that prima facie evidence is established, the parents must prove by a preponderance of the evidence that the child is safe in their home. Thus, the juvenile court found the parents had an "affirmative duty to prove that they were not negligent" and that merely indicating the parents did not injure the child and did not know who did is insufficient.

This is a misinterpretation of the parents' burden under section 355.1, subdivision (c) and *In re A.S.*, *supra*, 202 Cal.App.4th 237. Contrary to the juvenile court's view, the parents were not required to prove that the children were safe in their care and that they were not negligent; instead, by denying that they inflicted or knew who inflicted the injuries on Leonardo, the parents presented evidence rebutting the presumption of section 355.1, subdivision (a). (See *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421-422 [finding rebuttable presumption affecting burden of producing evidence that mailed documents were received was rebutted by the alleged recipient's equivocal denial of receipt].) The applicability of section 355.1 did not affect the burden of proof, which remained with the Department at all times. (See *Estate of Trikha*, *supra*, 219 Cal.App.4th at p. 803 [though the burden of producing evidence may shift during the course of a trial or hearing, the burden of proof remains with the party designated by law].)

Nonetheless, this does not end our inquiry because we must decide not whether the parents met their burden of producing evidence, but whether the trial court erred in finding jurisdiction over Leonardo based on section 300, subdivision (b) and over Patrick based on section 300, subdivisions (b) and (j). (*In re A.S.*, *supra*, 202 Cal.App.4th at p. 246 [" ' "[W]e uphold judgments if they are correct for any reason, 'regardless of the

11

correctness of the grounds upon which the court reached its conclusion.' [Citation.] 'It is judicial action and not judicial reasoning which is the subject of review.' " ' "].)

## II. Insufficient Evidence

Mother contends insufficient evidence supports the jurisdictional findings. It appears the juvenile court's misinterpretation of the jurisdictional presumption of section 355.1 colored its view of the evidence, and, in the absence of that presumption, the evidence is simply too equivocal to support the juvenile court's jurisdictional findings. Therefore, we will reverse the jurisdictional orders.

" 'We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.]' [Citation.] 'In so doing, we consider the evidence favorably to the prevailing party and resolve all conflicts in support of the trial court's order. [Citation.] "Substantial evidence" means evidence that is reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case.' " (*In re D.P.*, *supra*, 225 Cal.App.4th at p. 902.) "Substantial evidence does not mean *any* evidence; it must be ' " 'substantial' proof of the essentials which the law requires." ' " (*In re B.T.* (2011) 193 Cal.App.4th 685, 691.)

In this case, it is clear someone caused the fracture of Leonardo's ribs, and it is also clear the perpetrator is someone known to the parents—either father or mother, their family members who cared for Leonardo, or the daycare providers who cared for Leonardo. However, it is also clear that there was no visible evidence of the child's injury and that no one other than the person who actually inflicted the injury would likely be aware that the child was injured. Indeed, the doctors did not diagnose Leonardo's fractures after his first hospital visit and X-ray, but only confirmed the injury following a subsequent visit precipitated by Leonardo's continued unrelated respiratory issues. Additionally, no one who cared for Leonardo suspected any other caregiver of abusing the child.

12

Even though the presumption under section 355.1 disappeared once the parents presented evidence rebutting it, the court could still consider the experts' testimony that Leonardo's injury was nonaccidental and most likely caused by someone squeezing Leonardo to quiet him.  (See *In re D.P.*, *supra*, 225 Cal.App.4th at pp. 904-905.)  However, just because there is circumstantial evidence that someone known to the parents inflicted the injury and the perpetrator has not been identified, does not mean the court "may presume both that the parents knew, or should have known that the child was injured, and knew, or should have known who the perpetrator was, to support a finding against the parents." (*In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1255.)  Rather, section 300, subdivisions (a), (b), (e), and, by extension, (j), all require that, "in the absence of evidence of actual abuse or neglect by the parent, there must be a showing that the parent knew or had reason to know that another person to whom the child was exposed was engaging in conduct resulting in abuse or injury." (*In re Roberto C.*, *supra*, at p. 1255.)

It must first be noted that the overwhelming and uncontroverted evidence presented by the doctors was that Leonardo's ribs were fractured nonaccidentally.  Thus, by dismissing the allegations pursuant to section 300, subdivision (a), the juvenile court implicitly found there was insufficient evidence either of the parents had fractured Leonardo's ribs.  (See § 300, subd. (a) [jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian"].)

Instead, the jurisdictional findings were premised on section 300, subdivision (b)(1) as to both children, and section 300, subdivision (j) as to Patrick.  Thus, the juvenile court had to find by a preponderance of the evidence that Leonardo had suffered or was at substantial risk of suffering serious physical harm as a result of his parents' inadequate supervision or protection or his parents' failure to adequately supervise or

protect him from the conduct of a custodian, based on his rib fractures; that Patrick had suffered or was at a substantial risk of suffering physical harm as a result of his parents' inadequate supervision or protection, based on Leonardo's rib fractures or the 2010 domestic violence incident; and that Patrick was at substantial risk of abuse or neglect because Leonardo was abused or neglected, based on his rib fractures. There is not sufficient evidence to support any of these findings.

Since the evidence established the injury was not the result of neglect, but of intentional application of force, the only way jurisdiction could be premised on section 300, subdivision (b)(1) was if the parents failed to protect Leonardo from the conduct of a custodian. During the period in which Leonardo was injured, mother, father, daycare providers, the maternal grandmother, the maternal aunt and uncle, and the paternal grandmother all cared for him at some time. Aside from evidence that one evening while father was caring for Leonardo, he called mother for help in soothing the child, and that there were contested reports of the toddlers and infants being sometimes in the same room at the daycare, there was no evidence presented to indicate which of the multiple custodians fractured Leonardo's ribs. Nor was there any evidence presented that parents were negligent in selecting the caregivers. The only caregiver called into question was the paternal grandmother, who had an undisclosed history with CPS, but there was no evidence that either father or mother was aware of that history when they left the children in her care, and mother and father had lived with paternal grandmother when Patrick was an infant and did not have any concerns about her being left alone with Leonardo Therefore, we conclude there is insufficient evidence that either Leonardo or Patrick had suffered or were at substantial risk of suffering physical harm due to the parents' failure to adequately supervise them or protect them from the conduct of a custodian with whom they were left to support a jurisdictional finding pursuant to section 300, subdivision (b)(1).

14

Moreover, Leonardo is a *nonverbal infant* and Patrick is a *verbal five-year-old child* in the frequent company of mandated reporters. Patrick was interviewed and indicated he felt safe with all family members and wanted to spend more time with his parents while he was in temporary foster care. Therefore, that Leonardo suffered fractured ribs, likely because someone squeezed him too tightly in an attempt to quiet him, is not sufficient evidence that there exists "a substantial risk that [Patrick] will be abused or neglected." (§ 300, subd. (j).) Thus, there is insufficient evidence to support the jurisdictional finding as to Patrick pursuant to section 300, subdivision (j) based on Leonardo's injury.

"Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717; see also *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023 [a showing of past harm is insufficient to establish dependency jurisdiction; the statute requires a substantial risk of future harm].) Here, the evidence indicates there was an incident of domestic violence between the parents four years earlier, but there was no evidence of any ongoing violence between the parents who had been separated for years. This is insufficient evidence to support a finding that past or present domestic violence between the parents placed Patrick at a current substantial risk of harm. Therefore, the prior domestic violence cannot be the basis of a jurisdictional finding for Patrick pursuant to section 300, subdivision (b)(1).

## DISPOSITION

Because the court lacked jurisdiction over Leonardo and Patrick, its jurisdictional orders are reversed and all subsequent orders are vacated as moot.

                                  _____BUTZ_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____RENNER_____, J.