Filed 10/25/22  Yerena v. American Guard Services CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOSE LUIS YERENA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AMERICAN GUARD SERVICES, INC.,<br><br>    Defendant and Appellant. | B316114<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV00124) |

APPEAL from an order of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Corinne C. Bertsche, Steven G. Gatley and Tracy D. Forbath for Defendant and Appellant.

Pairavi Law, Edwin Pairavi and Joshua M. Mohrsaz for Plaintiff and Respondent.

_____

American Guard Services, Inc. (AGS), appeals from an order denying its motion to compel plaintiff Jose Luis Yerena to arbitrate claims arising out of termination of his employment as a security guard. The trial court found AGS failed to meet its burden to establish Yerena had agreed to a written arbitration agreement. Applying the applicable standards of review, we conclude the trial court did not err in so finding and we affirm.

## FACTUAL BACKGROUND[1]

AGS hired Yerena in 2005 to work as an unarmed security officer. On Christmas Eve in 2018, upon returning home from work, Yerena felt sick and experienced difficulty breathing. On January 9, 2019, Yerena underwent emergency heart surgery. He was unable to return to work until March 1, at which time he contacted AGS about returning to his job. AGS never responded, and eventually Yerena concluded AGS had terminated him.

On January 4, 2021, Yerena filed a complaint in Los Angeles County Superior Court, alleging causes of action for discrimination on the basis of his medical condition, failure to provide reasonable accommodation, failure to engage in good faith interactive process, retaliation, and wrongful termination. AGS requested that Yerena stipulate to refer the dispute to binding arbitration. Through his counsel, Yerena refused.

On June 9, 2021, AGS filed a motion to compel arbitration and to stay Yerena's civil action pending completion of arbitration. In support of its motion, AGS submitted the declaration of Mohamed Youssef, general counsel of its corporate

---

[1] The facts in our Background are derived from Yerena's complaint and AGS's declarations in support of its motion to compel arbitration.

2

parent. Attached as an exhibit to Youssef's declaration is a copy of an agreement captioned "American Guard Services, Inc. Employment Arbitration Policy," which required signatories "to resolve most employment-related disputes . . . that are based on a legal claim through final and binding arbitration." (Some capitalization omitted.) Although the exhibit is dated July 23, 2019, which is well after the last date Yerena worked for AGS, it bore an electronic facsimile signature of "Luis Jose Yerena," stating that it had been signed on November 1, 2018 at 11:16 a.m. Above the electronic signature, on a space labeled "Employee's name," is the entry "DataMappingError." (Boldface & underscoring omitted.)

Youssef's declaration described the means whereby employees electronically sign AGS arbitration agreements. According to Youssef, employees must use a computer to "create an account in AGS's Employee Dashboard" in order to "acknowledge and agree to AGS's policies." As part of this process, the employee signs on to a website, where the employee enters "his [or her] mobile phone number and email address." The system "automatically sends a temporary password to the email address entered and directs the employee to a second website." At that second website, the employee "logs in using his or her email address and the temporary password provided to him or her," whereupon the employee "is immediately prompted to create a new password of his or her own choosing." Using this newly-created password, the employee is "electronically presented with AGS's written policies. After reading each policy, the employee is directed to indicate [his or her] acceptance electronically by clicking a button indicating that he or she agrees to the policy. There is no option to decline any policy or

3

move forward to the next policy without accepting the previous policy." Among the documents presented to employees for approval is the "American Guard Services, Inc. Employment Arbitration Policy."

Youssef did not claim personal knowledge that Yerena had in fact electronically signed the arbitration agreement. Instead, he declared he "personally reviewed Mr. Yerena's employment file after this dispute arose and confirmed that his file contained each policy acknowledgement he electronically accepted with a time-stamped record of his acceptance." Youssef concluded that the arbitration agreement, and Yerena's signature, are authentic: "I know the electronically signed Agreement in Mr. Yerena's employment file (and attached hereto as Exhibit A) is authentic and authentically bears Mr. Yerena's electronic signature because (a) the language in the Agreement is identical to our standard policy, (b) the process described in this Declaration ensured that nobody but Mr. Yerena could have accepted the policy on his behalf, including after the fact, and (c) the procedures AGS had in place guaranteed that if Mr. Yerena had not accepted AGS's arbitration policy, the Human Resources Department would have learned of it and taken corrective action."

Yerena's opposition to the motion to compel arbitration included his declaration that disputed many of Youssef's assertions regarding Yerena's electronic execution of the arbitration agreement.[2] First, Yerena stated in his declaration

---

[2] Yerena also opposed arbitration on substantive grounds, including unconscionability. Because the trial court did not reach these alternate grounds, and because we conclude AGS failed to

4

that he neither signed the arbitration agreement, nor authorized his signature to be added to the document. Yerena also directly contradicted Youssef's description of the procedure allegedly followed to obtain Yerena's signature by averring that he did not now, nor did he in 2018, "have a computer, email address, or access to either."[3] Yerena further denied ever creating "an account or password" with AGS. Finally, Yerena stated he did not, and would not, sign his name as "Luis Jose Yerena," the name shown on AGS's proffered copy of the arbitration agreement.

In reply, AGS submitted a further declaration by Youssef, which responded to Yerena's denial that he had ever set up an online account with AGS or electronically signed the arbitration agreement. For employees like Yerena, who lack access to "an internet-accessible device," Youssef explained that "the employee will complete the onboarding process and create their [*sic*] online portal onsite at AGS's headquarters" in Gardena. Employees use one of four computers in the building lobby, and human resources employees "supervise the entire process." According to Youssef, AGS's records showed that it sent the arbitration agreement "to Mr. Yerena on or about June 8, 2018 and the Agreement shows that he signed it on or about November 1, 2018 at 11:16 p.m.[4]

---

show Yerena agreed to arbitrate his claims, we do not address these other arguments.

[3] ASG's evidence appears to corroborate this assertion. Exhibit D to Youssef's reply declaration is a screenshot of AGS's employee record for Yerena, showing that the spaces for Yerena's "Email" and "Smartphone SMS" are blank.

[4] The document in question bears a sign in time of 11:16 a.m., not 11:16 p.m.

5

PST with his signature 'Luis Jose Yerena.' " Based upon these new facts, Mr. Youssef reiterated "that the electronically signed Agreement in Mr. Yerena's employment file is accurate and authentically bears Mr. Yerena's electronic signature."

During oral argument below, the trial court focused on the sufficiency of AGS's evidence going to the authenticity of Yerena's signature on the arbitration agreement. "They're calling into question your showing. And I find some of the plaintiff's argument to be quite compelling that there's no evidence here—First of all, there's evidence that at least three other people and perhaps a fourth identified as ATF Administrator had access to the same account. [¶] There is no indication, in the hiring document screenshot, that there was a signature in November by Luis Jose but only that it was sent to him. [¶] I don't understand how it gets sent to him and also modified by him on that day. [¶] There's no indication that there are security measures that would have prevented the H.R. people for the defendant from creating this website and signing it electronically."

At the close of argument, the court took the matter under submission. Later that day, the court issued its order denying the motion to compel arbitration. The court ruled AGS had failed to "meet its burden of showing by a preponderance of the evidence that the parties entered into an arbitration agreement." The court pointed to "the absence of any showing of security measures" ensuring that Yerena himself set up his account. The court found, "[I]t appears that any human resources employee could have created the online account on Plaintiff's behalf." The court concluded, "[I]n the absence of evidence that Plaintiff set up the system on June 8, 2018 or accessed it thereafter, the Court

6

cannot conclude that Plaintiff ever saw the arbitration agreement, much less that he signed it on November 1, 2018."

The court next addressed the absence of evidence tending to show that Yerena set up the online account. "Defendant has offered no percipient witness attesting to Plaintiff's use of the on-site computers to set up an account in June 2018. Moreover, given the list of other employees who 'modified' or uploaded documents on that date, the inference from Defendant's own evidence is that one of its human resources employees set up the account to populate the new system with previously filed employment documents, like Plaintiff's 2010 employment application. Further, the fact that Plaintiff's name was incorrectly input into the employment account reinforces the Court's conclusion that it was not Plaintiff who created the account or signed the arbitration agreement."

Finally, the court rejected AGS's argument that Yerena had to sign the arbitration agreement as a condition of keeping his job, such that the fact of his continued employment was implicit confirmation that Yerena had signed the arbitration agreement. "The Court, thus, rejects Defendant's suggestion that Plaintiff's continued employment means he signed the arbitration agreement. What is more, since there is no credible evidence that Plaintiff ever saw the arbitration agreement, Defendant cannot rely on the agreement itself to establish its existence. Even though the agreement itself indicates that 'continuation of employment with the Company is deemed to be acceptance of this policy' (Youssef Decl., Exh. A, preamble[ ]), such a provision cannot be applied to an individual who never saw the agreement."

AGS filed a timely notice of appeal.[5]

## DISCUSSION

### A. Standard of Review

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration' [citation]" (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*)), because the standard of review varies depending on the basis for the trial court's denial of the petition. (See *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166 (*Gamboa*).) Generally, we review an order denying a motion to compel arbitration for abuse of discretion except when the petition presents a pure question of law. (*Id.* at p. 166.) When the trial court's ruling turns on questions of fact, the substantial evidence standard applies, including deferring to the trial court's credibility findings. (*Ibid.*)

Here, it is undisputed that AGS bore the burden below to prove the existence of an arbitration agreement. (*Gamboa, supra,* 72 Cal.App.5th at pp. 166–167.) This is significant to our standard of review here because "based on the court's finding that [the movant] failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian, supra,* 42 Cal.App.5th at p. 1066; see *Gamboa,* at p. 166.) Put another way, in order to prevail on appeal, AGS must show as a matter of law, that the evidence compelled a finding that Yerena signed the arbitration agreement. (*Gamboa,* at p. 166.) This is a difficult task given

---

[5] An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).)

8

that we must resolve all factual and credibility findings in favor of respondent.  (*Id*. at p. 167.)

**B.     Under the Applicable Standard Of Review, AGS Fails To Show Error Because the Record Is Not Susceptible of an Interpretation Finding the Existence of an Arbitration Agreement as a Matter of Law**

A party may file a petition to compel arbitration where "an agreement to arbitrate the controversy exists" and "a party to the agreement refuses to arbitrate that controversy."  (See Code Civ. Proc., § 1281.2.)  "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)  "In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate."  (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420.)  AGS sought to prove Yerena had agreed to arbitrate his claims by relying on his purported electronic signature to the agreement.  Civil Code section 1633.9 addresses how a proponent of an electronic signature may authenticate such a signature. Section 1633.9 provides, in pertinent part: "An electronic record or electronic signature is attributable to a person if it was the act of the person.  *The act of the person may be shown in any*

*manner,* including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a), italics added.)

As previously noted, "[w]here, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing plaintiff,[6] we presume the trial court found the plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.) Under these principles, " ' "the question becomes whether [AGS's] evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' [Citations.]" (*Fabian, supra,* 42 Cal.App.5th at p. 1067.)

---

**6** Although Code of Civil Procedure section 1291 provides either party could have requested a statement of decision regarding the motion to compel arbitration, neither a statement of decision nor a request for a statement appears in the record. "Because a statement of decision was available but not requested, we apply the doctrine of implied findings and presume the court made all factual findings necessary to support its order—to the extent substantial evidence supports such findings." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 (*Ruiz*).)

The record does not support that as a matter of law, the evidence compels a finding there was an arbitration agreement between AGS and Yerena.  The trial court noted the evidence in derogation of such a finding including:  (1) "the absence of any showing of security measures ensuring that . . . an account can be created on-site only by the employee"; (2) the "appear[ance] that any human resources employee could have created the online account on Plaintiff's behalf"; (3) "the absence of evidence that Plaintiff set up the system on June 8, 2018 or accessed it thereafter"; (4) the lack of a "percipient witness attesting to Plaintiff's use of the on-site computers to set up an account in June 2018"; (5) "the list of other employees who 'modified' or uploaded documents"; (6) "the inference from Defendant's own evidence . . . that one of its human resources employees set up the account to populate the new system with previously filed employment documents, like Plaintiff's 2010 employment application"; and (7) "the fact that Plaintiff's name was incorrectly input into the employment account."

Our own review of the evidence discloses additional inconsistencies in AGS's evidence not addressed by the trial court.  For example, exhibit E to Youssef's reply declaration states that the agreement to arbitrate was sent to Yerena's account on June 8, 2018, yet the exhibit shows that the account was not created until almost a month later, on July 4, 2018, a national holiday.  For the trial court to accept AGS's version of events, it would also have had to accept that AGS's headquarters were open and staffed by human resources personnel on a national holiday, and that Yerena chose that day to visit AGS's headquarters to "create" the account into which documents had been input a month previously.  AGS did not produce anyone

11

from its human relations department who saw Yerena come in on July 4, 2018 (or any other day), to set up his employee account on one of the lobby computers. Under the doctrine of implied findings, we imply that the trial court found that any such "onboarding" did not occur.

On appeal, AGS argues Yerena's evidence was insufficient to establish he did not sign the arbitration agreement. Labeling Yerena's arguments "speculative," AGS contends "plaintiff presented no evidence that anyone else besides plaintiff created his own account, logged onto the system using his unique credentials, and signed his name to the Arbitration Agreement or any other documents." We reject these contentions.

First, Yerena's evidence was not "speculative." Yerena declared unambiguously that he never signed onto AGS's system, created an online account, or signed the arbitration agreement. Second, it was AGS's burden below to prove the existence of an arbitration agreement. Thus, we cannot disturb the trial court's finding that AGS did not satisfy that burden unless we are able to conclude from the record that AGS did so as a matter of law. As explained above, there was evidence in the record, if believed by the trial court, to support its finding. This ends our inquiry.

AGS urges us to follow *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047 (*Espejo*). There, the Court of Appeal reversed an order denying the defendant's motion to compel arbitration of an employment dispute brought by one of its associate physicians. *Espejo* is factually inapposite. Unlike here, Espejo admitted he (1) had access to a computer and an e-mail account; and (2) received and electronically signed an employment agreement, but did not recall seeing or electronically signing the arbitration agreement.

12

(*Id*. at p. 1054.)  Second, defendant's onboarding process was demonstrably more secure than the one before us.[7]  Here, by contrast, there was evidence that an employee's "dashboard" could be created and accessed by anyone using a computer terminal in the lobby of AGS's headquarters, and in fact, it appeared that people other than Yerena had accessed Yerena's purported online account.

We believe that *Ruiz* and *Fabian* are more factually apt.  In *Ruiz*, the trial court denied a petition to compel arbitration on the ground that the moving party " 'failed to establish that an Arbitration Agreement in fact exists . . . .' "  (*Ruiz, supra*, 232 Cal.App.4th at p. 841.)  The appellate court affirmed

---

**7**  Our colleagues in Division 4 described the defendant's evidence of its security measures as follows:  "[O]nce the 'Area Medical Director decides to make a physician an offer of employment, [the director] completes the employment agreement, and electronically signs the agreement, an email is generated to the applicant' with a link to the SCPMG Applicant Homepage.  Access to the applicant homepage 'requires the use of a private and unique username and password,' both of which are provided by phone 'directly and orally to the applicant.'  After logging into SCPMG's online system with this username and password, 'the first thing Dr. Espejo would be required to do is re-set his password to one of his own choosing.  He cannot proceed to the next page unless he re-sets his password.'  At that point, according to Tellez [defendant's declarant], Espejo would have to 'opt to agree to complete the employment documents using an electronic signature.'  Once he agreed, he would be directed to the portion of the Applicant Homepage containing the four hyperlinks to his employment agreement, the DRP, the R&R, and a benefits handbook.  'Dr. Espejo only had access to these documents by logging in and using his unique user name and password.' "  (*Espejo, supra*, 246 Cal.App.4th at p. 1053.)

13

explaining that defendant's declarant (Main) "summarily asserted in her initial declaration" that Ruiz was the one who electronically signed the arbitration agreement but "did not explain how she arrived at that conclusion." (*Id.* at p. 843.) Further, "Main never explained how Ruiz's printed electronic signature, or the date and time printed next to the signature, came to be placed on the 2011 agreement. More specifically, Main did not explain how she ascertained that the electronic signature on the 2011 agreement was 'the act of' Ruiz. (Civ. Code, § 1633.9, subd. (a).)" (*Id.* at pp. 843–844.) The court noted Main's reply declaration merely described defendant's onboarding system in general, but did not repair defendant's evidentiary failure to meet its burden of proof or show that the trial court erred in refusing to compel arbitration. (*Id.* at p. 844.)

Here, the trial court similarly found that AGS's evidence did not establish Yerena electronically signed the arbitration agreement or that AGS's onboarding process made it impossible for anyone else to have signed it when, in fact, there was evidence that others had entered Yerena's purported online account and AGS gave inconsistent evidence as to Yerena's purported electronic execution of the arbitration agreement.

In *Fabian*, the trial court found there was no agreement to arbitrate a dispute involving a home improvement contract. The agreement in question purported to bear the electronic signature and initials of the plaintiff and was accompanied by a 15-digit DocuSign "Identity Verification Code." The plaintiff denied ever signing any documents either physically or electronically. The trial court found defendant's assertion that the plaintiff signed the contract containing an arbitration agreement was unsupported by facts as to "who presented Fabian with a physical

14

or electronic copy of the Contract, the specific location where the Contract was signed, the time when the Contract was signed, or how Anderson [defendant's declarant] ascertained that Fabian was present when the Contract was signed. Nor did Anderson make any reference to DocuSign or the process used to obtain and verify Fabian's 'docusigned' electronic initials and signature." (*Fabian, supra,* 42 Cal.App.5th at pp. 1069–1070.) The appellate court concluded that absent this detail, defendant's evidence amounted to "little more than a bare statement that [the plaintiff] 'entered into' the contract without offering any facts to support that assertion." (*Id.* at p. 1070.) Arguably, here, AGS arguably offered more general evidence of AGS's onboarding process than did the defendant in *Fabian*, but there was also evidence to support, among other inconsistencies with this general evidence, that Yerena did not have an e-mail account and that others had made entries in Yerena's purported onboarded account in AGS's system. As set forth above in our Discussion, AGS's evidence did not support a conclusion that as a matter of law, the trial court erred in finding AGS had not met its burden to prove the existence of an arbitration agreement.

## DISPOSITION

The order denying American Guard Service, Inc.'s motion to compel arbitration is affirmed.  Jose Luis Yerena shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

CHANEY, J.

BENKE, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.