Filed 6/15/16  Licon v. Wish-I-Ah Skilled Nursing & Wellness Cntr CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KATHY LICON et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>WISH-I-AH SKILLED NURSING &<br>WELLNESS CENTRE LLC,<br><br>Defendant and Appellant. | F070304<br><br>(Super. Ct. No. 13CECG03983)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Ballard Rosenberg Golper & Savitt, John B. Golper and Jeffrey P. Fuchsman for Defendant and Appellant.

Sutton Hague Law Corporation, S. Brett Sutton, Jared Hague, Joseph V. Macias and Wesley Carlson for Plaintiffs and Respondents.

-ooOoo-

Defendant appeals from the denial of its petition to compel arbitration of plaintiffs' claims against it.  We conclude the arbitration agreement excluded class and collective actions from its scope, so plaintiffs were not required to arbitrate the class claims or the private attorney general claims included in their first amended complaint.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff, Kathy Licon,[1] filed an action on behalf of herself and all others similarly situated, alleging causes of action for wage and hour violations against her employer. Plaintiffs filed a first amended complaint, adding Denise as a named plaintiff and adding causes of action alleged by her as a private attorney general, seeking penalties for Labor Code violations on behalf of herself and other employees of defendant. Defendant responded with a petition to compel arbitration of the disputes. It presented evidence plaintiffs had signed various documents agreeing to be bound by defendant's arbitration program or acknowledging receipt of the booklet that described it and contained its provisions. Plaintiffs opposed the petition, asserting none of the documents presented by defendant constituted an agreement to arbitrate their employment disputes; alternatively, if such an agreement existed, the provisions of the arbitration program were unconscionable and should not be enforced, and the arbitration agreement excluded or did not apply to the class claims or the private attorney general claims.

The trial court denied the petition, finding the arbitration agreement expressly excluded class and collective actions. Further, the agreement submitted by defendant was unconscionable, and the unconscionable provisions should not be severed. Defendant appeals from the denial of its petition to compel arbitration.

---

[1]  For clarity and convenience, we will refer to plaintiffs by their first names because they share a last name. No disrespect is intended.

We note that, in defendant's papers here and in the trial court, Kathy is referred to as Johnnie. Plaintiffs, in their respondents' brief, note that Kathy goes by the name Johnnie. There is no dispute Kathy signed the documents that bear the signature "Johnnie Licon."

## DISCUSSION

### I. Appealability and Standard of Review

An order denying a petition to compel arbitration is appealable pursuant to Code of Civil Procedure section 1294, subdivision (a).[2]

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that … [g]rounds exist for the revocation of the agreement." (§ 1281.2.) The party seeking arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement; the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense to enforcement of the agreement. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." (*Robertson v. Health Net of California, Inc*. (2005) 132 Cal.App.4th 1419, 1425.) When the facts are undisputed, the existence and enforceability of an agreement to arbitrate are questions of law subject to de novo review. (*Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1519 (*Sparks*); *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 979.) When the evidence is conflicting, we accept the trial court's resolution of factual issues if it is supported by substantial evidence. (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267,

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1277 (*Nyulassy*).)  Plaintiffs presented no conflicting evidence; therefore, our review of the existence and validity of the arbitration agreement is de novo.

## II.      Agreement to Arbitrate

The trial court impliedly found both Kathy and Denise entered into an arbitration agreement with defendant.  The undisputed facts support that finding.

In *Cruise v. Kroger Co*. (2015) 233 Cal.App.4th 390 (*Cruise*), the plaintiff signed an application for employment with the defendant, in which she stated she understood and agreed that the defendant's binding arbitration policy was incorporated by reference into the application and that the policy applied to any employment related disputes between the parties.  (*Id*. at pp. 392–393.)  In the application, the plaintiff also acknowledged receipt of a copy of the policy.  There was evidence, however, that the arbitration policy was not provided to the plaintiff at the time she applied for employment.  (*Id*. at p. 393.)

After her employment was terminated, the plaintiff sued the defendants, and the defendants moved to compel arbitration.  (*Cruise*, *supra*, 233 Cal.App.4th at p. 394.)  They presented the signed employment application and a four-page arbitration policy they contended was the policy referred to in the application.  The trial court denied the motion, concluding the four-page document submitted consisted of pages from the employee handbook; the document was undated and there was no evidence it existed in 2007 when the plaintiff applied for employment.  There also was no evidence the document was ever given to the plaintiff, and the plaintiff denied ever receiving the employee handbook.  (*Id*. at p. 395.)

On appeal the court found the undisputed evidence of the language of the employment application established an agreement to arbitrate employment disputes. (*Cruise*, *supra*, 233 Cal.App.4th at p. 396.)  The defendants' inability to establish the contents of the arbitration policy in effect in 2007 did not relieve the plaintiff of the obligation to arbitrate.  Its only impact was that the defendants failed to demonstrate the

parties agreed to arbitrate by procedures different from those set out in the California Arbitration Act (§ 1280 et seq.; CAA).  (*Cruise,* at p. 399.)  "The language of the arbitration clause in the instant employment application, standing alone, was sufficient to establish the *existence* of an agreement by the parties to arbitrate employment-related disputes.  While the parties' agreement to arbitrate is enforceable, the employer's inability to establish the contents of its Arbitration Policy precludes the employer from enforcing the provisions of said policy.  Instead, the arbitration proceeding is to be conducted in accordance with the procedures set forth in the CAA as well as applicable case law."  (*Id.* at p. 400.)

In *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416 (*Craig*), several years after the plaintiff's employment began, her employer established a four-step dispute resolution program to resolve all employee disputes.  (*Id.* at pp. 418–419.)  Twice the employer mailed to the plaintiff's home address a brochure explaining the program and emphasizing it would apply to her and to any future legal disputes she had with the company relating to her employment.  (*Id.* at pp. 419, 420.)  When the company terminated the plaintiff's employment, she sued.  The company moved to compel arbitration.  (*Id.* at pp. 419–420.)  The plaintiff denied receiving the mailed brochures and asserted she had not agreed to arbitrate her claims.  (*Id.* at p. 420.)  The trial court granted the motion to compel arbitration and the appellate court affirmed.

"General principles of contract law determine whether the parties have entered a binding agreement to arbitrate.  [Citation.]  This means that a party's acceptance of an agreement to arbitrate may be express [citations] or implied-in-fact where … the employee's continued employment constitutes her acceptance of an agreement proposed by her employer."  (*Craig, supra,* 84 Cal.App.4th at p. 420.)  The court concluded substantial evidence supported the trial court's resolution of the conflicting evidence in the company's favor:  "there [was] substantial evidence (1) that the memorandum and brochure were received by Craig in 1993 and again in 1994; (2) that she continued to

5.

work for Brown & Root until 1997; and (3) that she thereby agreed to be bound by the terms of the Dispute Resolution Program, including its provision for binding arbitration." (*Id*. at p. 422.)

### A.    *Denise*

Denise signed a single-page document entitled "Employment Dispute Resolution Program Agreement." The first paragraph of the agreement, enclosed by a box, stated that defendant's employment dispute resolution (EDR) program provides a four-step process for resolving employment problems, which ensures a fair resolution to disputes and is often faster and less expensive. It stated:  "If you wish to be considered for employment, you must read and sign the following agreement binding you to use the EDR Program to resolve disputes. An EDR Program booklet describing the program in detail is available where you obtained the Applicant Packet." The second paragraph provides that "both the Company and I agree to resolve all claims, controversies or disputes relating to my application for employment, my employment and/or the termination of my employment with the Company exclusively through the Company's Employment Dispute Resolution Program." The third paragraph recognizes the last step in the process is final and binding arbitration before a neutral arbitrator, and acknowledges agreement that "the Company and I are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial." The final two paragraphs of the agreement state:  "I understand that the EDR Program affects my legal rights. I also understand that I may obtain a copy of the EDR Program booklet and seek legal advice before signing this Agreement. [¶]  I certify that I have read this Agreement, I have had an opportunity to ask questions regarding its content, I understand this Agreement, I believe it to be fair, and I voluntarily enter into this Agreement." Denise did not dispute she signed this agreement; it is dated October 17, 2009.

Denise also did not dispute that she signed a one-page document entitled "Employment Dispute Resolution Program Acknowledgment," which bears her signature and is dated November 4, 2009, the first day of her employment. This document acknowledges that Denise received a copy of the EDR Program booklet. It also states: "I realize it is my responsibility to familiarize myself with its contents."

Like the language in the employment application in *Cruise*, the EDR program agreement Denise signed constituted an agreement to arbitrate. Plaintiffs argue Denise was not bound to arbitrate because she did not receive the EDR program booklet until after she signed the EDR program agreement. But the EDR program agreement, standing alone, was sufficient to bind Denise to arbitrate her employment disputes with defendant, even if it did not establish the rules by which the arbitration would be governed.

Plaintiffs do not dispute that, after she signed the EDR program agreement, Denise acknowledged receiving a copy of the EDR program booklet. This booklet bears the date March 1, 2007, and defendant's supporting declaration states it was still being given to new employees in 2011. The booklet explains the four-step dispute resolution process in detail, makes the rules of the American Arbitration Association (AAA) applicable to arbitration, and describes various rules that apply to the arbitration proceeding. It ends with an EDR program acknowledgement that is identical to the one signed by Denise.

The undisputed evidence indicates Denise signed the EDR program agreement in which she agreed to resolve all disputes with her employer through its dispute resolution program, the fourth step of which was binding arbitration. Thus, she was bound to submit all employment related disputes to binding arbitration. Subsequently, she received a copy of the 2007 EDR program booklet, explaining the program and the four-step process of dispute resolution. After receipt of the booklet, she continued her employment with defendant for more than three years. As in *Craig*, she was given notice of the terms of the EDR program through the booklet, she continued to work for defendant, and she thereby impliedly agreed to be bound by the terms of the EDR

program, including binding arbitration pursuant to the rules set out in the 2007 EDR program booklet.  Thus, the undisputed evidence indicates Denise agreed, expressly and impliedly, to binding arbitration of her employment related disputes with defendant.

### B.    Kathy

The undisputed evidence shows Kathy began working for defendant in 1979.  She signed an EDR program acknowledgement dated May 27, 2009.  By this document, she acknowledged receipt of a copy of the 2007 EDR program booklet and her responsibility to familiarize herself with its contents.  Although the signed acknowledgement does not contain information about the arbitration program or an express agreement to arbitrate disputes, and therefore is not itself an enforceable express agreement to arbitrate, it is evidence that defendant provided Kathy with notice of the program and its terms.  The program booklet notified defendant's employees that "[y]our decision to apply, accept employment or to continue employment with the Company constitutes your agreement to be bound by the EDR Program."  It stated the company also agreed to be bound by the program, and this mutual agreement meant both parties were "bound to use the EDR Program as the only means of resolving employment related disputes."  After acknowledging receipt of the booklet, Kathy remained employed with defendant for more than two years.  Thus, as in *Craig*, Kathy was given notice of the EDR program and its terms, she continued to work for defendant thereafter, and she impliedly agreed to be bound by the terms of the EDR program as reflected in the booklet.

The undisputed evidence establishes an agreement to arbitrate between defendant and both plaintiffs.  All of the claims alleged by Kathy and Denise in their first amended complaint allegedly arose on or after December 31, 2009.  Thus, they arose after both plaintiffs signed the documents which establish their express or implied agreement to binding arbitration of all employment disputes with defendant.

8.

## III. Exclusion of Class or Collective Actions

The 2007 EDR program book contained the following provision: "This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right to a jury trial on issues *covered* by the EDR Program.… This Program *covers* only claims by individuals and *does not cover* class or collective actions." (Italics added.) Applying a plain meaning interpretation, plaintiffs contend the words "covers" and "does not cover" mean class and collective actions are outside the scope of the arbitration agreement, and therefore those claims may be brought in a court action. Defendant contends the language "This Program covers only claims by individuals and does not cover class or collective actions" constitutes a class action waiver; thus, the arbitration agreement requires employees to arbitrate all their claims against defendant, but the class action waiver requires them to do so on an individual, non-class basis. The trial court agreed with plaintiffs, interpreting the same sentence to mean "that class and collective claims are not covered by the arbitration clause." Accordingly, the claims were not required to be arbitrated and there was nothing to prevent plaintiffs from pursuing their class or collective claims in a court action.

General rules of contract interpretation apply. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties as it existed at the time of contracting. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264; Civ. Code, § 1636.) "Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822.) The ordinary sense of a word may be found in its dictionary definition. (*Stamm Theatres, Inc. v. Hartford Casualty Ins. Co.* (2001) 93 Cal.App.4th 531, 539.)

"Cover," as used in this context, is defined as "to have width or scope enough to include or embrace" or "to comprise, include, or embrace in an effective scope of treatment or operation." (Webster's 3d New Internat. Dict. (1993) p. 524.) In short, to "cover" means to include within its scope. It follows that the phrase "does not cover" means excludes from its scope. Thus, the plain meaning of the provision that "[t]his Program covers only claims by individuals and does not cover class or collective actions" is that class and collective claims are excluded from the scope of the EDR program and its arbitration procedures. Further, the provision that the parties agreed "to use the EDR Program as the only means of resolving employment related disputes and to forego any right to a jury trial *on issues covered* by the EDR Program" indicates the parties did not intend to use the EDR program or to forego their right to a jury trial on matters not covered by the EDR program, such as class and collective claims. Accordingly, by agreeing to be bound by the provisions set out in the EDR book, plaintiffs did not agree to either bring class claims in arbitration or waive their right to bring class and collective claims in court.

This interpretation of the term "covered" is consistent with the use of that term in the paragraphs of the EDR book under the heading "Covered Disputes." Those paragraphs provide:

> "Disputes covered under the EDR Program pertain to claims such as discipline, discrimination, fair treatment, harassment, termination and other legally protected rights.

> "Disputes not covered under the EDR Program relate to workers' compensation…, unemployment benefits, health, welfare and retirement benefits and claims by the Company for injunctive relief to protect trade secrets and confidential information.

> "You retain the right to pursue employment disputes before federal or state administrative agencies. Nothing in the EDR Program prevents you from filing a claim with a federal or state administrative agency or from cooperating in a federal or state agency investigation."

10.

Again, the term "not covered" is used to mean the claims are excluded from the obligation to resolve them through the EDR program and its arbitration procedures. The disputes "not covered" include claims required to be adjudicated administratively and claims for injunctive relief the employer presumably reserved for litigation in court. The exclusion of these claims from the coverage of the arbitration agreement, like the exclusion of class claims, does not mean the employee waives the right to bring them in any forum.

Defendant suggests other language in the EDR program booklet demonstrates an intent to arbitrate all claims on an individual, nonclass basis: language that the EDR program applied to all disputes "concerning legally protected rights," and "all claims, controversies or disputes" between the parties, as well as language referring to the employee and the employee's claims in terms of "I," "me," "my," and "you" (such as: "differences may arise between the Company and me," "both the Company and I agree," and "an attorney may represent you"), which defendant contends contemplate only individual claims. Defendant's argument seems to be that, because plaintiffs agreed to arbitrate all of their claims against defendant except class claims, they agreed to arbitrate all of their claims on an individual basis and thereby waived their right to bring class claims in any forum. When considered along with the provisions discussed above, however, the cited language is consistent with the interpretation excluding class claims from the scope of the arbitration agreement. All claims, controversies, or disputes must be arbitrated, except those not covered by the EDR program. Those not covered, including class claims, would be litigated in another forum. As a result, only individual claims would be arbitrated.

When the parties' construction of contractual language is conflicting, extrinsic evidence is admissible to interpret the language of the agreement, as long as the evidence is not used to give the agreement a meaning to which it is not reasonably susceptible. (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912.) When the extrinsic evidence is not

conflicting, resolution of the ambiguity is a question of law, subject to independent review. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.) The extrinsic evidence considered in this case was not in conflict.

The extrinsic evidence considered by the trial court consisted of the historical development of the law addressing the enforceability of class action waivers in arbitration agreements, the place of the 2007 EDR program in that chronology and the subsequent arbitration agreement defendant implemented after the law changed (defendant's Alternative Dispute Resolution Policy (ADRP) and the employee agreement to be bound by it). Defendant challenges consideration of the ADRP agreement to interpret the 2007 EDR program language.[3] Defendant asserts consideration of the subsequent agreement is contrary to Evidence Code section 1151. That statute, however, makes evidence of subsequent remedial measures "inadmissible to prove negligence or culpable conduct." (Evid. Code, § 1151.) The ADRP agreement was not used here as evidence of negligence or culpable conduct, but to interpret the meaning of contractual language. Thus, defendant's challenge is without merit.

Defendant also asserts the revised arbitration agreement does not shed any light on what the 2007 EDR program was intended to cover. In the context of the historical development of the law, however, it does.

*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, addressed the validity of a class arbitration waiver. The agreement between the bank and its credit cardholders provided that, if either party elected to resolve a dispute between them by arbitration, neither party would have the right to litigate the claim in court or have a jury trial on the claim; additionally, neither party was allowed to consolidate claims by or against other cardholders or to arbitrate any claim as a representative or member of a class or in a

---

**3** We note it was defendant who placed in evidence its ADRP, an unsigned employee agreement to be bound by the ADRP, and its 2013 employee handbook, which refers to the ADRP.

12.

private attorney general capacity.  (*Id*. at pp. 153–154.)  The court concluded that, at least in some circumstances involving small consumer claims, "the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration."  (*Id*. at p. 153.)  The court based its conclusion on a determination that, under the circumstances there, the class arbitration waiver was unconscionable.  (*Id*. at pp. 158–163.)

After *Discover Bank*, parties drafting arbitration agreements had to be concerned with the possibility a court would invalidate a class action or class arbitration waiver.  If the court invalidated such a waiver in a contract with an otherwise valid arbitration agreement requiring that the parties arbitrate all disputes between them, the drafting party faced the prospect of being required to arbitrate disputes on a class basis.  If the drafting party deemed that to be a less desirable result than litigating class claims in court,[4] then a provision like the one in defendant's EDR program booklet carved out class claims and excluded them from arbitration, allowing them to be litigated in court.

Subsequently, in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*), the United States Supreme Court determined the *Discover Bank* rule was preempted by the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA).  (*Concepcion*, *supra*, at p. 352.)  It concluded the principal purpose of the FAA was to ensure private arbitration agreements are enforced according to their terms, and "class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA."  (*Id*. at p. 344.)  Following *Concepcion*, the California Supreme Court held that the FAA also preempted a California case that held class action waivers in

---

**4**      A court action would apply formal rules of evidence, provide for a jury trial, and allow appeal on the merits after judgment, all of which might be more important to a defendant when a large class claim is in issue, rather than a relatively small individual claim.

13.

employment arbitration agreements were invalid under certain circumstances. (*Iskanian v. CLS Transportation Los Angeles* (2014) 59 Cal.4th 348, 361, 366 (*Iskanian*).)

The effect of the *Concepcion* decision generally was to make class action or class arbitration waivers enforceable, in the absence of rules of general contract law that would invalidate them. In the wake of the *Concepcion* decision, defendant replaced its EDR program book with its ADRP and an employee agreement to be bound by that policy.[5] At the time of defendant's motion to compel arbitration, both the ADRP and the ADRP agreement provided: "I understand and agree this ADR Program prohibits me from joining or participating in a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claims of others." Thus, the current language clearly prohibits employees from bringing or participating in class and representative actions, rather than carving class claims out as matters not covered by the arbitration agreement.

The contrast between the 2007 EDR program provisions and the subsequent ADRP agreement provisions, in the context of the development of the law governing validity of class action waivers, supports the interpretation of the 2007 provisions as excluding class actions from the arbitration requirement, rather than waiving the right to pursue class claims in any forum. Accordingly, we conclude the trial court correctly interpreted the language of the 2007 EDR program booklet as excluding plaintiffs' class claims from the scope of the arbitration agreement.

## IV. Private Attorneys General Act Claims

In the first amended complaint, Denise alleged claims under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA). The PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee

---

[5] There was no evidence either plaintiff signed an ADRP agreement.

14.

and fellow employees, with most of the proceeds of that litigation going to the state."
(*Iskanian*, *supra*, 59 Cal.4th at p. 360.) Like plaintiffs' class action claims, Denise's
PAGA allegations present collective claims, brought on behalf of herself "and other
current or former employees" (Lab. Code, § 2699, subd. (a)), that are excluded from the
parties' arbitration agreement by the provision that "[t]his Program … does not cover
class or collective actions."

Additionally, in *Iskanian*, the court concluded an employee's right to bring a
PAGA action is unwaivable. (*Iskanian, supra,* 59 Cal.4th at p. 383.) It further concluded
the FAA "does not preclude our Legislature from deputizing employees to prosecute
Labor Code violations on the state's behalf. Therefore, the FAA does not preempt a state
law that prohibits waiver of PAGA representative actions in an employment contract."
(*Id.* at p. 360.)

Defendant contends that, to the extent *Iskanian* invalidates waivers of PAGA
claims in arbitration agreements, it violates the FAA's preemption of state laws that
outright prohibit arbitration of a particular type of claim, as was explained in *Concepcion*.
(See *Concepcion*, *supra*, 563 U.S. at p. 334.) We are bound by the decisions of the
California Supreme Court and must follow *Iskanian*. (*Auto Equity Sales, Inc. v. Superior
Court* (1962) 57 Cal.2d 450, 455.)

The EDR program agreement excluded class and collective actions from its scope,
so Denise was not obligated to arbitrate her PAGA claims. Additionally, Denise's right
to bring a PAGA action against her employer was unwaivable, according to *Iskanian*.
For both these reasons, we conclude Denise cannot be compelled to arbitrate her PAGA
claims against defendant.

***DISPOSITION***

The order denying defendant's motion to compel arbitration is affirmed.  Plaintiffs are entitled to their costs on appeal.


_____

HILL, P.J.

WE CONCUR:


_____

KANE, J.


_____

FRANSON, J.